UNITED STATES of America,
Plaintiff-Appellee,

v.

Carlos A. CATANO, Defendant-Appellant.

No. 76–3316
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 6, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,*
5 Cir., 1970, 431 F.2d 409, Part I.

Irwin G. Lichter, Miami, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and HILL, Circuit Judges.

PER CURIAM:

Appellant Carlos A. Catano appeals from his conviction in a jury trial for violation of 21 U.S.C.A. §§ 952(a) and 841(a)(1), which make it illegal to smuggle cocaine into the United States and to possess cocaine with the intent to distribute it. Appellant argues that his conviction should be reversed because of the trial court's alleged errors in (i) admitting into evidence testimony concerning crimes subsequent to the commission of the crime charged in the indictment in the instant case, which testimony was highly prejudicial and unrelated to the charges against defendant; (ii) failing to give defendant's requested charges; (iii) denying defendant's motion for judgment of acquittal with regard to the possession of cocaine with intent to distribute it; and (iv) denying defendant's motion to dismiss the indictment for unreasonable delay in arresting defendant. Finally, appellant also argues that the discovery of an unclaimed and unmarked suitcase containing cocaine found on a baggage conveyor and never presented for entry into the United States cannot be, as a matter of law, importation of cocaine within the meaning of the statute. We find no reversible error and affirm.

Appellant entered the United States at Miami International Airport from Colombia on Flight 144, on May 16, 1975. When this flight's baggage was unloaded, an unclaimed bag was found on the luggage carousel. Although the bag apparently had arrived on Flight 144, it contained no identification, claim check or mark which would indicate where and when it had been placed on the plane. A traffic agent testified at trial that a passenger started to claim this bag, but then said that it was not his. The agent could not identify the man and said that he did not think he had ever seen appellant before. When the bag was taken to customs, it was found to contain 51 individually wrapped packages of cocaine. The Drug Enforcement Agency chemist later found its net weight to be 19.007 kilograms.

On November 18, 1975, appellant met with two DEA undercover agents at his apartment in Greenwich, Connecticut. The agents told him they wanted to buy several kilos of cocaine. Appellant informed the agents that he could possibly sell them several kilos at $54,000 to $56,000, the final price depending on how much he had to pay for it.

Appellant informed the agents that his source of supply for the cocaine was in Colombia, and that he was a Colombian citizen living in the United States posing as a Puerto Rican. The agents also testified

that appellant told them that a few months previously, he had carried 19 kilograms of cocaine into Miami, but that something went wrong, and that the FBI intercepted the package.

Appellant told the agents that he would contact his connections in Colombia to find out when he could expect another shipment of cocaine. The agents testified that appellant told them that he traveled to Colombia several times a year, and that occasionally he brought cocaine back with him, although usually someone else brought it into the country. He agreed to contact the agents later and let them know when they could buy two kilos.

On January 22, 1976, appellant met with the agents again. He informed them that he was expecting a shipment of cocaine at any time, although it was getting difficult to bring cocaine out of Colombia. They also discussed using Bradley Airport to bring the cocaine in.

On March 22, 1976, appellant held his third meeting with the DEA undercover agents. The appellant stated that he had not received any word concerning further shipments of cocaine from Colombia. At this meeting, one agent mentioned having read a magazine article about the seizure of 19 kilos of cocaine in Miami at the airport, in a suitcase which was not claimed. One of the agents testified that appellant told him that he had a newspaper clipping at his house which described the seizure of the 19

kilos of cocaine which he, appellant, had left at the airport. At these meetings, appellant never transferred or exhibited any cocaine to the agents. No cocaine, or magazine or newspaper articles were found during a search of appellant's residence.

On March 29, 1976, appellant was arrested. The indictment alleged that on or about May 16, 1975, at Miami, Dade County, Florida, the Defendant knowingly and intentionally imported cocaine into the United States and on the same date did knowingly and intentionally possess cocaine with the intent to distribute it.[1] Appellant did not testify at his trial. Appellant was convicted after a jury trial and now appeals from that conviction.

Appellant's first argument is that the trial court erred in admitting into evidence testimony concerning crimes subsequent to the commission of the offense charged in the indictment. In particular, appellant argues that it was error for the trial court to admit into evidence the testimony of the two DEA agents concerning their three meetings with appellant after the May 16 incident. Assuming that a subsequent crime was involved here, F.R.Evid. 404(b) provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[2]"

---

1. Thus, the indictment centers around the event of the unclaimed bag of 19 kilograms of cocaine at the Miami airport, not the three subsequent meetings with the two DEA agents.

2. The Advisory Committee Notes to Rule 404(b) provide:

No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof in other facts appropriate for making decisions of this kind under Rule 403.

The Senate Committee Report on this provision noted that

This rule provides that evidence of other crimes, wrongs, or acts is not admissible to prove character but may be admissible for

other specified purposes such as proof of motive. .

Although your committee sees no necessity in amending the rule itself, it anticipates that the use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.

S.Rep.No.93–1277, 93d, Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News pp. 7051, 7071:

Rule 404(b) is subject to Rule 403, which provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ The testimony of the two DEA agents concerning their conversations with appellant in the post-May 16, 1975, meetings was highly probative and relevant as to the crucial issue of appellant's knowledge and intent to import and distribute cocaine. Thus, we conclude that the testimony was admissible under F.R.Evid. 404(b), unless otherwise inadmissible under F.R.Evid. 403. In light of the legislative history, *see* note 2, *supra,* we conclude that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. In short, the testimony was admissible, and the trial court did not err in admitting it.

■ Appellant next argues that the trial court erred in refusing to give two of his requested jury charges. These concerned the rule that importation is not complete until the contraband has entered this country. However, our examination of the charges given convinces us that the trial court fully charged the jury on the applicable law. In these circumstances, appellant cannot be heard to complain that his formulation was not utilized. *See United States v. Jiminez,* 5 Cir., 1973, 484 F.2d 91.

■ Appellant next argues that the suitcase removed from the international flight and placed on the luggage carousel at Miami Airport was not imported, within the meaning of the statute. However, 21 U.S.C.A. §§ 951 and 952(a) define importation as the bringing in or introduction of an article into any area of the United States. Section 802(26) provides that "the term 'United States', when used in a geographical sense, means all places and waters, continental or insular, subject to the jurisdiction of the United States." Without doubt, this obviously includes the International Airport in Miami, Florida. *See United States v. Pentapati,* 5 Cir., 1973, 484 F.2d 450.

Appellant next argues that the trial court erred in denying his motion for acquittal with regard to possession of the cocaine with intent to distribute it. He argues that only his own statements indicated that the bag containing the cocaine belonged to him and that there was no showing that he had either physical control of it or the power or intention to exercise dominion or control over the bag, either directly or through others. We disagree.

■ Twice, appellant admitted to DEA agents that he brought the cocaine to Miami but was forced to abandon it because "something went wrong." The suitcase arrived on the same flight from Colombia as did appellant. There was sufficient and substantial evidence (albeit circumstantial) from which the jury could have reached the conclusion beyond a reasonable doubt that defendant had brought the cocaine in with him to the United States and that he had constructive possession of the suitcase.[3]

■ Finally, appellant argues that his motion to dismiss the indictment for prein-

---

The House Committee Report provides that The second sentence of Rule 404(b) as submitted to the Congress began with the words "this subdivision does not exclude the evidence when offered." The Committee amended this language to read "it may, however, be admissible", the words used in the 1971 Advisory Committee draft, on the ground that this formulation properly placed greater emphasis on admissibility than did the final Court version.

H.Rep.No.93–650, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News pp. 7075, 7081.

**3.** Where one entrusts a suitcase to an airline for the purpose of loading it upon an airplane and returning it to one's actual possession at the destination, the airline is acting as that person's agent and the person retains constructive possession of the suitcase while it is in the actual possession of the airline. *See United States v. Williams,* 6 Cir., 1974, 503 F.2d 50.

dictment delay should have been granted.[4] Generally, however, an indictment will not be dismissed for pre-indictment delays absent a showing of substantial prejudice to a fair trial and where the delay is a deliberate device to gain a tactical advantage. See, e. g., *United States v. Marion,* 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; *United States v. Rice,* 5 Cir., 1977, 530 F.2d 1364 [1977]; *Gravitt v. United States,* 5 Cir., 1975, 523 F.2d 1211; *United States v. McGough,* 5 Cir., 1975, 510 F.2d 598. Our review of the record indicates that the appellant has not made the required showing. Therefore, we affirm.

AFFIRMED.

---

4. The importation occurred on May 16, 1975, and appellant was not arrested until March 29, 1976.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.