**UNITED STATES of America**

v.

**James Thomas MADALONE, Defendant.**

**No. 80–24–Cr–JLK.**

United States District Court,
S. D. Florida.

June 24, 1980.

Thomas D. Sclafani, Asst. U. S. Atty., for plaintiff.

John S. Berk, Fort Lauderdale, Fla., for defendant.

## ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL

JAMES LAWRENCE KING, District Judge.

This matter arose upon the defendant's motion for a judgment of acquittal on all three counts in the indictment. James Thomas Madalone is charged in Count I with conspiracy to import heroin, in violation of 21 U.S.C. §§ 952(a) & 963; in Count II with importation of heroin, in violation of 21 U.S.C. §§ 952(a) and 18 U.S.C. § 2; in Count III with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The defendant and his traveling companion were arrested after arriving at the Miami International Airport from Nassau and before departing on another flight to Montreal.

To summarize the defendant's argument, he contends that he cannot be convicted of these charges because he never intended to import into the United States since the typewriter case which contained the heroin was checked through to Montreal. Similarly, he argues that he cannot be convicted of possession with intent to distribute since, at worst, the defendant intended to distribute the heroin in Canada.

The government has offered the following account of the facts of this case: In Nassau, Mr. Madalone entrusted a typewriter case containing heroin to his traveling companion, Ms. Archambault, who was to check the case with the airline. He told Archambault that his baggage would otherwise be overweight. Madalone and Archambault and their baggage then went through pre-clearance at United States customs in Nassau. After checking their baggage, the defendants boarded their flight to Miami, where they were to change planes to continue on to Montreal after an approximately 2½ hour stopover. The defendant's baggage and that of Archambault were checked through to Montreal. Shortly after arrival in Miami, Archambault was arrested, and just before the departure of the flight to Montreal the defendant was arrested.

### I.

The defendant contends that he cannot be found guilty of conspiracy to import or importation because the evidence does not reflect that he intended to stay in the United States or to bring the heroin into the United States for it to remain here. Rather, he argues that the evidence shows that the defendant was merely "in-transit" and that the typewriter case was merely "in-transit" through the Miami airport. The defendant relies on the Fifth Circuit opinion in *United States v. Pentapati*, 484 F.2d 450 (5th Cir. 1973) (per curiam).

In *Pentapati*, the defendant argued that he stopped in Miami on his way from Bogota, Colombia to his eventual destination of London. In Miami, he left his airplane and, going through customs, he was searched. When searched, the defendant was found in possession of 66 grams of cocaine. The Fifth Circuit affirmed the conviction, noting:

We are not faced here with the case of the true in-transit passenger who is never brought under the control of the customs authorities. . . . Defendant's allegation of his *intention* to depart the United States immediately, even if uncontrovertibly established, is of no consequence. The statute looks to the *fact* of bringing a controlled narcotic within the territorial jurisdiction of the United States, and not to the alleged importer's subsequent plans.

484 F.2d at 451 (emphasis in original, footnote deleted).

Madalone asserts that he is a true "in-transit" passenger and that he comes within the implicit *Pentapati* exception for such passengers. In addition, he asserts that the heroin-laden typewriter case was "in-transit" baggage bound for Montreal and that

this Court ought to create an analogous exception for such baggage.

It is far from clear that *Pentapati* created an "in-transit" exception to its more general rule that the importation statute "looks to the *fact* of bringing a controlled narcotic within the territorial jurisdiction of the United States, and not to the alleged importer's subsequent plans." There is evidence that the defendant caused the heroin to be brought to the Miami International Airport, a place clearly within the territorial jurisdiction of the United States. *See, e. g., United States v. Catano*, 553 F.2d 497, 500 (5th Cir. 1977). Of course, the specific intent required by the statute must be a specific intent to bring the controlled substance into the United States but it does not require a specific intent to do anything else with the narcotic once it is imported.

If there exists a *Pentapati* exception for in-transit passengers and—by extension— baggage, it is limited to the instances in which the passenger and—by extension— the baggage are "never brought under the control of the customs authorities." 484 F.2d at 451. Such might be the case, for example, were an individual traveling from Mexico to Madrid on a flight which stopped over in Miami to take on additional passengers but which did not permit passengers from Mexico to disembark in Miami. Such Mexico-to-Madrid passengers might never have to pass through United States customs and therefore would have never come under the control of customs authorities.

█ Such is not the case here, where (1) the defendant voluntarily submitted himself and by inference the heroin-laden case entrusted to his companion to the United States customs inspection in Nassau, (2) such pre-clearance gave him the right to stay in Miami if he later altered his plans, and (3) he knew he had to disembark and change planes in Miami. Nor was the heroin-laden case true "in-transit" baggage. First, the case had been subjected to United States customs authority in Nassau.

Second, although the case had been checked all the way through to Montreal, it is reasonable to infer that, had the defendant retrieved the baggage claim check from his traveling companion and sought to have it produced for him in Miami, it would have been turned over to him without further customs processing. Of course, one who controls the baggage claim ticket is in constructive possession of the baggage. *See United States v. Catano*, 553 F.2d 497, 500 n. 3 (5th Cir. 1977). Third, just as the defendant had to change planes in Miami, so too did the heroin-laden case. On the facts as presented, neither the defendant nor the case were truly "in-transit."

█ The defendant has also argued that the United States has no interest in prohibiting alleged conduct such as the defendant's since his intention was not to affect United States commerce. The short answer to this contention is that the importation of heroin for transportation through the United States affects its commerce irrespective of whether it is eventually distributed in the United States.* If the defendant intended to import heroin into the United States for the purpose of later introducing it into Montreal, he intended an act which affected United States commerce.

Besides the indirect effect on our relations with other nations, permitting the United States to be used as a conduit for narcotics such as heroin has obvious direct effects on our nation. If such importation for the purpose of transportation were not illegal, then the United States would be at the mercy of the subsequent "good" intentions of narcotics couriers to refrain from distributing the narcotics in this country. Moreover, the potential for violence which attends the transportation of narcotics need not be borne by the public. Congress did not create such an exception to the crime of importation and the Fifth Circuit should not be misinterpreted as creating such an exception either.

---

* In addition, the Government has directed the Court's attention to the United States participation in the Single Convention on Narcotic

Drugs. *See, e. g. United States v. LaFroscia*, 354 F.Supp. 1338, 1341 (S.D.N.Y.1973).

## II.

■ The defendant asserts that he cannot be found guilty of the crime of possession with intent to distribute since, at worst, he intended to distribute the heroin in Montreal. This case then raises the issue of whether the intent to distribute narcotics in a foreign country satisfies the intent to distribute requirement of 21 U.S.C. § 841(a)(1).

In *Pentapati*, the Fifth Circuit did not decide the issue raised herein because the trial court, sitting without a jury, had found that the defendant there intended to distribute his narcotics in the United States. This Court is unaware of any Fifth Circuit decision which reaches this question. However, the recent Ninth Circuit decision in *United States v. Gomez-Tostado*, 597 F.2d 170, 172–73 (9th Cir. 1979) which concludes that an intent to distribute in a foreign country satisfies the intent element of 841(a)(1) is persuasive. This Court elects to follow the Ninth Circuit lead in the absence of controlling Fifth Circuit law.

After careful consideration of the record and after listening to the evidence presented in this case, it is hereby

ORDERED and ADJUDGED that the defendant's motion for a judgment of acquittal on all counts is denied with respect to all counts.

## ON POST–TRIAL MOTION

This matter arose upon the motion of the defendant James Thomas Madalone for a judgment notwithstanding the verdict and, in the alternative, for a new trial. The government opposes the motion. The jury in this case returned a verdict of "not guilty" with respect to the conspiracy count and verdicts of "guilty" on the importation and possession with intent to distribute counts. The defendant discusses five separate grounds for this motion in his memorandum. These grounds are:

(a) The defendant did not have the requisite intent to commit a crime against the United States.

(b) The defendant comes within the in-transit exception to the crime of importation.

(c) The defendant did not have constructive possession of the typewriter case full of heroin.

(d) The verdict is inconsistent.

(e) The court improperly denied the defendant's motion to suppress.

Each of these contentions will be treated seriatim.

■ Madalone argues that he "cannot be convicted of importing a controlled substance into the United States unless he had the specific intent to *distribute* the substance within the jurisdictional confines of the country." Memorandum of Law at 3 (emphasis added). He makes this wholly novel assertion by misreading two Fifth Circuit opinions. In *United States v. Conroy*, 589 F.2d 1258 (5th Cir. 1979), the court of appeals held that conspiracy to import includes a requirement that the defendant know that the drugs in question were to go to the United States. In *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980), a Fifth Circuit panel stated that possession with intent to distribute may be "nearly identical" to the crime of conspiracy to import. However, the defendant has taken both cases out of context. *Conroy* involved a conspiracy to import where the drugs had never entered the United States and there was an arguable basis to believe that the drugs were never to enter the United States but instead were to go directly to Canada. The Fifth Circuit panel concluded that there was sufficient evidence to support the conclusion that the defendant knew the drugs were to go to the United States and not Canada. *Conroy* has no application to the present case where the heroin actually entered the United States and the defendant knew that it must so enter this country. In *Baker*, although the Fifth Circuit drew some analogies between the crimes of conspiracy to import and possession with intent to distribute in concluding that both crimes encompassed activities beyond the three-mile limit but within the twelve-mile contiguous zone, the very quo-

tation cited by the defendant notes that conspiracy to import requires only an intent "to bring such substances within United States territorial limits" and not an intention to *distribute* in the United States. Hence, the defendant's novel theory about the requirements of importation is without merit.

The question of whether the defendant was an in-transit passenger within a possible exception to the narcotics laws was considered fully in the court's Order Denying Motion for Judgment of Acquittal. The defendant has presented nothing in the present motion which would cause the court to alter or amend its conclusion in the prior order.

Madalone's argument that he was not in constructive possession of the typewriter case is not a model of clarity. Apparently, his argument is two-fold. First, he contends that he did not have the intention to exercise control over the case while in the United States. Second, he argues that a claim ticket gives one control over checked luggage *only* at its final destination. As an initial matter, the court notes that its instructions to the jury on possession stated that possession requires a showing that the defendant "has both the power and intention, at a given time to exercise dominion or control over a thing, either directly or through another person." The defendant appears to acknowledge that this instruction was proper. Hence, the question is simply whether there was sufficient evidence before the jury from which they could conclude that this test was met. Madalone's transfer of the bag to Archambault asking her to check it for him because otherwise he would be over his baggage weight limit provides a reasonable basis for the jury to conclude that the defendant was merely relinquishing actual possession of the bag and that he expected her to give him the claim check whenever he wanted it. Moreover, there was evidence at the trial that, had Madalone produced the claim check in Miami to retrieve the bag, he would have been able to do so. Thus the jury could logically conclude that the defendant had both the *power* of control

through Archambault and the *intention* to control the transportation of the bag. The jury did not have to conclude that he actually intended to remove the bag from the actual possession of the airlines in Miami.

The defendant's contention that his motion should be granted because the verdict is inconsistent is frivolous. Jury verdicts in criminal cases need not be consistent. *See* C. Wright, 2 *Federal Practice and Procedure* § 514 (1969). Moreover, this particular jury's verdict is not inconsistent. The crime of conspiracy is distinct from the crimes of importation and possession with the intent to distribute—the defendant's novel theories notwithstanding.

Finally the defendant has presented the court with no persuasive arguments that the court's ruling granting the motion to suppress only in part was contrary to the law.

For all of the above reasons, it is hereby

ORDERED and ADJUDGED that the defendant's motion is denied.