**UNITED STATES of America, Appellee,**

v.

**Michael MUENCH, Michelle Lewis and Albert Foreman, Appellants.**

**Nos. 360, 255, 279, Dockets 81–1227, 81–1516, 81–1517.**

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1982.
Decided Nov. 17, 1982.

See also, D.C., 514 F.Supp. 283.

**30**

Mark B. Gombiner, New York City (William M. Kunstler, New York City, of counsel), for appellant Michelle A. Lewis.

Richard Potack, San Francisco, Cal., for appellant Albert B. Foreman.

Alan Dressler, San Francisco, Cal. (George G. Walker, San Francisco, Cal., of counsel), for appellant Michael J. Muench.

Jane Simkin Smith, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Vivian Shevitz, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before LUMBARD, CARDAMONE and PIERCE, Circuit Judges.

LUMBARD, Circuit Judge:

Albert Foreman, Michelle Lewis, and Michael Muench appeal from judgments of conviction entered upon guilty pleas, taken before Judge Neaher of the Eastern District of New York, to the possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1976). The appellants made their pleas following Judge Neaher's denial of their motions to dismiss the indictment and to suppress the cocaine. As permitted by the terms of their plea agreements, the appellants here renew their claim that the indictment should have been dismissed and the cocaine suppressed. Muench additionally claims that he was denied the effective assistance of counsel. We find that the appellants' claims are without merit and affirm the convictions.

In November, 1980, agents of the Drug Enforcement Administration (DEA) in San Francisco learned from an anonymous caller that Kenneth Feld and four others were planning to smuggle cocaine from South America to West Germany via Kennedy Airport in New York. On December 3, 1980, the same source informed the DEA that Feld had that day flown to La Paz, Bolivia, where he would purchase approximately 20 pounds of cocaine. The informant also said that Lewis and Foreman would fly to La Paz to meet Feld and receive luggage in which the cocaine would be concealed. The suitcases would bear baggage identification tags in the names of "Micky" and "Michael." Lewis and Foreman would fly from La Paz to Munich, West Germany with a stopover in New York. At New York, two persons named "Micky" and "Michael" would board the airplane with luggage tags bearing the names of defendants Lewis and Foreman. On the New York to Munich leg of the flight, the four travelers would exchange baggage tags so that when the suitcases with the cocaine went through West German customs, they would appear to belong to passengers coming from New York, rather than Bolivia. West German officials recognized Bolivia to be a source country for cocaine, and the defendants hoped by this strategem to avoid a thorough customs search of their luggage upon arrival in Munich. The informant said that Feld would not continue on the flight to Munich but would switch planes at Kennedy Airport for a flight to California.

On December 10, 1980, DEA agents learned that Lewis and Foreman had made reservations on Lufthansa Airlines Flight # 493 traveling that day from La Paz to Munich via New York. The agents also learned that reservations on the New York to Munich leg of Flight # 493 had been made in the names of Michael Muench and Miciala Evans. That evening when Flight # 493 landed at Kennedy Airport the passengers in transit from La Paz to Munich, including Lewis and Foreman, were removed from the plane and escorted to a lounge adjacent to the boarding ramp in accordance with procedures routinely followed in the cleaning and refueling of aircraft. This lounge is considered by U.S. Customs officials to be a "sterile" area where in-transit passengers are not required to go through U.S. Customs but may not leave the lounge until their plane is ready for reboarding.

While the in-transit passengers were waiting, customs inspectors removed the luggage from the cargo compartment of Flight # 493. They searched suitcases marked with Muench's and Evans' names

and found cocaine in several false compartments in the suitcases. News of this discovery was relayed to customs agents surveilling Lewis and Foreman in the in-transit lounge. When each of the baggage claim tags of Lewis and Foreman matched those of the seized bags, the two were arrested. The news was also relayed to agents at the Lufthansa boarding area surveilling New York passengers soon to board Flight # 493. These agents arrested Muench and Evans. Feld, who had by this time already gone through customs and boarded an Eastern Airlines flight to California, was arrested prior to take-off by DEA agents aboard the plane.

Evans, Feld, Foreman, Lewis, and Muench were indicted on four counts of drug violations. After the filing of the indictment Evans died. On April 27, 1981 Judge Neaher denied the defendants' motion to dismiss the indictment. 514 F.Supp. 283 (E.D.N.Y.1981). He also denied their motion to suppress the cocaine. On May 1, 1981 Foreman and Muench, and on May 4, 1981 Lewis, pleaded guilty to Count II of the indictment, charging possession of narcotics with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Under the plea bargain the government withdrew the remaining counts of the indictment, and the defendants retained the right to appeal the denial of the motions to dismiss and suppress. Feld elected to go to trial and on May 6, 1981 was acquitted by a jury. On June 12, 1981 Judge Neaher sentenced both Muench and Foreman to five years imprisonment plus a five-year special parole term, and Lewis to an indeterminate sentence pursuant to the Youth Correctional Act. All three defendants remain free on bail pending this appeal.

Under 21 U.S.C. § 841(a)(1) (1976), it is "unlawful for any person knowingly or intentionally to ... possess with intent to ... distribute ... a controlled substance." The appellants by their guilty pleas admitted, and before us do not deny, that they knowingly possessed cocaine with an intent to distribute. They nonetheless argue that for two reasons the indictment under § 841(a)(1) should have been dismissed.

First, they argue that possession within the meaning of § 841(a)(1) does not occur unless the possessor seeks to pass through U.S. Customs or permanently to remain in the United States. Second, they argue that the intent required by § 841(a)(1) is an intent to distribute narcotics *within the United States.* They contend that § 841(a)(1) does not apply if the narcotics are intended for distribution in a foreign country. We reject those arguments because they are not supported by statute, precedent, or common sense.

We find no basis for the appellants' argument that Congress did not intend § 841(a)(1) to criminalize narcotics possession by international travelers who do not go through customs and do not attempt to cross the customs boundaries of the United States. In support of their argument the appellants cite dictum in two cases, *United States v. Pentapati,* 484 F.2d 450 (5th Cir. 1973), and *United States v. Madalone,* 492 F.Supp. 916 (S.D.Fla.1980). In *Pentapati,* the defendant, who had flown from Colombia to Miami, attempted to go through U.S. Customs and was arrested when a search revealed that he was carrying cocaine. Following his conviction for narcotics importation under 21 U.S.C. § 952(a), the defendant appealed, contending that at the time of his arrest he was an international passenger in transit from Colombia to a third country, and as such could not have "imported" narcotics into the United States within the meaning of § 952(a). Noting that the defendant had attempted to pass U.S. Customs, the Fifth Circuit rejected the defendant's description of himself as an international traveler and affirmed the conviction. "We are not faced here," said the court, "with the case of the true in-transit passenger who is never brought under the control of the customs authorities." 484 F.2d at 451.

In *Madalone,* the defendant went through U.S. Customs in Nassau, flew to Miami, and was there arrested while waiting to board a plane to Canada. Convicted of importing heroin in violation of 21 U.S.C. § 952(a), the defendant argued that he was an interna-

tional traveler exempt from § 952(a) under *Pentapati*. The court affirmed the conviction, and held that upon the facts of his case the defendant could not rely upon the *Pentapati* dictum. The court noted that the defendant and the heroin, having already gone through U.S. Customs, *could* have remained in the United States upon arrival in Miami. The court did state that if *Pentapati* created an exception to § 952, the exception might apply to a traveler on an international flight who makes a brief stopover in the United States but does not pass through customs. *See* 492 F.Supp. at 919.

■ The appellants argue that their case falls squarely under the *Pentapati* exception as interpreted in *Madalone*. They point out that Foreman and Lewis did not go through U.S. Customs and that the baggage containing the cocaine, if U.S. officials had not intervened, would have been carried unopened to West Germany. They thus ask this court to turn the *Pentapati* and *Madalone* dictum into an express holding that § 841(a)(1) does not apply to a drug dealer's possession of narcotics within United States territory but outside its customs boundaries.

We decline this invitation for several reasons. As an initial matter, both *Pentapati* and *Madalone,* in relevant part, interpreted 21 U.S.C. § 952(a), proscribing importation, and not § 841(a)(1), proscribing possession with intent to distribute. However, as we accept the appellants' implicit assumption that cases decided under § 952(a) are to some degree instructive in prosecutions under § 841(a)(1), we must also take note of cases such as *United States v. Catano,* 553 F.2d 497, 500 (5th Cir.), *cert. denied,* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 40 (1977), and *Palmero v. United States,* 112 F.2d 922, 924 (1st Cir.1940). These cases hold that the crime of importation is complete when contraband is brought into United States territory, regardless of whether an attempt is made to bring the contraband through customs. They suggest that the crime of possession likewise is complete when possession occurs upon United States territory, and that an attempt to pass customs is

immaterial. *See also* 21 U.S.C. § 951(a)(1) (1976). Second, and more important, an "in-transit" exception to § 841(a)(1) would be inconsistent with the Congressional intent underlying both the statute and the United States drug control laws generally. As Judge Neaher noted in his ruling upon the motion to dismiss the indictment, the United States has by treaty obligated itself to cooperate with other nations in the suppression of the international drug trade. *See* 514 F.Supp. at 288. As a party to the Single Convention on Narcotic Drugs, March 30, 1961, 18 U.S.T. 1407, T.I.A.S. No. 6298 (ratified by U.S. 1967), the United States is obligated to adopt measures for the control of persons engaged in the international trade, manufacture and distribution of specified drugs, including cocaine. Similar obligations are imposed by the Convention on Psychotropic Substances, T.I.A.S. No. 9725, signed at Vienna, Austria on February 21, 1971 and entered into force for the United States on July 15, 1980. The Congress has expressly declared that the drug laws are in part intended to meet the United States' duties under those treaties. *See* 21 U.S.C. §§ 801(7), 801a. *See also United States v. Rodriquez-Camacho,* 468 F.2d 1220, 1222 (9th Cir.1972), *cert. denied,* 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); *United States v. LaFroscia,* 354 F.Supp. 1338, 1341 (S.D.N.Y.), *affd.,* 485 F.2d 457 (2d Cir.1973). It would be absurd to ignore Congress' expressed intent and hold that international drug dealers who make stopovers in the United States are exempt from the U.S. drug laws as long as they do not attempt to go through U.S. Customs. Nor do we believe that Congress intended the public to bear the risk of violence that is created by any transportation of illicit drugs, *see United States v. Madalone,* 492 F.Supp. 916, 919 (S.D.Fla.1980), or that Congress was unaware of the possibility that drugs possessed within the United States but outside its customs boundaries might eventually be distributed within the country. *See Cunard S.S. Co. v. Mellon,* 262 U.S. 100, 131, 43 S.Ct. 504, 510, 67 L.Ed. 894 (1923) (importation of liquor under the National Prohibition Act.) In sum, we hold

that the crime of possession under § 841(a)(1) is complete when possession occurs anywhere within United States territory.

▐ The appellants' argument that § 841(a)(1) requires proof of an intent to distribute drugs *within the United States* is equally fallacious. They argue that § 841(a)(1) does not proscribe the possession in the United States of drugs intended for distribution in a foreign country. The appellants' reliance on *United States v. Hayes,* 653 F.2d 8 (1st Cir.1981) and *United States v. Baker,* 609 F.2d 134 (5th Cir.1980), is misplaced. In both of these cases the Coast Guard stopped vessels outside the United States' territorial waters and discovered contraband. The First and Fifth Circuits held that § 841(a)(1) does not apply to possession outside the territorial seas unless the possessor intended to distribute the contraband within the United States. In the situation involved in *Baker* and *Hayes,* the intent to distribute within the United States supplies a jurisdictional nexus that might otherwise be lacking. The intent to cause effects within the United States also makes it reasonable to apply to persons outside United States territory a statute which is not expressly extraterritorial in scope. *See Hayes,* 653 F.2d at 15; *Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949) (federal laws are presumptively territorial in scope). In this case, however, the appellants, with intent to distribute, possessed contraband *within the territory of the United States.* The actual possession on United States territory supplies the jurisdictional nexus and obviates the need for proof of intent to distribute within the United States. The Ninth Circuit has recently held that possession of contraband in the United States with intent to distribute in another country is subject to § 841(a)(1). *United States v. Gomez-Tostado,* 597 F.2d 170 (9th Cir.1979). *Accord, United States v. Madalone,* 492 F.Supp. 916, 920 (S.D.Fla.1980).[1] This conclusion is clearly consistent with the Congressional intent and policy considerations discussed above.

The appellants also challenge the denial of their motion to suppress the cocaine uncovered by the warrantless search of their luggage. They argue that the warrantless search cannot be upheld as a border search because they made no attempt to pass through customs. They contend that an international traveler who does not seek to enter the United States through customs, but who instead remains in the "sterile" area of an "in-transit" lounge, has not waived his expectation of privacy and for that reason cannot be subjected to a warrantless search. The appellants' argument misapprehends the nature of the United States' authority to conduct border searches.

▐ The right of the United States to conduct border searches is based on its sovereign authority to protect its territorial integrity. By reason of that authority, the United States "is entitled to require that whoever seeks entry must establish the right to enter and to bring into the country whatever he may carry." *Torres v. Puerto Rico,* 442 U.S. 465, 473, 99 S.Ct. 2425, 2430, 61 L.Ed.2d 1 (1979). This broad power is "necessary to prevent smuggling and to prevent prohibited articles from entry." *United States v. 12 200-ft. Reels of Super 8MM Film,* 413 U.S. 123, 125, 93 S.Ct. 2665, 2667, 37 L.Ed.2d 500 (1973). Accordingly, the Supreme Court long has held that border searches of persons and property entering the country are reasonable under the Fourth Amendment "simply by virtue of the fact that they occur at the border." *See United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977) and cases cited therein. Once Foreman and Lewis came within the territorial jurisdiction of the United States their plans to stay or leave, and the circumstances of

---

1. In *United States v. Sindin,* 620 F.2d 87, 90 (5th Cir.1980), the Fifth Circuit assumed but did not hold that § 841(a)(1) requires proof of an intent to distribute within the United States. The Fifth Circuit found it unnecessary to decide the issue because ample evidence indicated that the defendant had such intent.

their passage in and out of the country, were entirely immaterial.[2] The challenged search was proper under the Fourth Amendment.[3]

Finally, Muench claims that his guilty plea should be vacated because he did not receive the effective assistance of counsel. The attorney retained by Muench at the outset of the case, Cameron Cunningham of East Palo Alto, California, did not appear at the hearing before Judge Neaher because of an injury. Richard Potack, the counsel for Feld, appeared specially for Cunningham at the hearings and represented both Muench and Feld. After consulting with both Potack and Cunningham (with whom he spoke over the telephone), Muench pleaded guilty to Count II of the indictment. Muench now claims that in making his plea he was denied the effective assistance of counsel because the attorney of his choice, Cunningham, was absent, and because Potack allegedly faced a conflict of interest in representing both Feld and Muench. Muench's claim is without merit.

■■■ A guilty plea ordinarily waives the right to appeal all nonjurisdictional defects in the proceedings. *See, e.g., United States v. Selby,* 476 F.2d 965 (2d Cir.1973); *United States v. Mann,* 451 F.2d 346 (2d Cir.1971); *United States v. Doyle,* 348 F.2d 715 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). Because a guilty plea must represent a voluntary and intelligent choice, *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), and because a defendant who pleads guilty on the advice of counsel is entitled to advice "within the

range of competence demanded of attorneys in criminal cases," *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), a defendant is entitled to claim on appeal, the usual rule of waiver notwithstanding, that his counsel's incompetency rendered his plea involuntary or unintelligent. See *Tollett v. Henderson,* 411 U.S. 258, 266–68, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In the present case, however, there is no evidence that Muench's plea was either involuntary or unintelligent, or that the representation afforded Muench by Cunningham and Potack fell outside "the range of competence demanded of attorneys in criminal cases."

■■■ Muench's responses to Judge Neaher's inquiries under Fed.R.Crim.P. 11 clearly established both Muench's understanding of the rights he elected to waive and a factual basis for the plea. The course of the proceedings establishes with equal clarity that Muench received the effective assistance of counsel. Muench fully discussed his change of plea with both Cunningham and Potack. He stated to Judge Neaher his satisfaction with the arrangements made for his defense, and he declined Judge Neaher's offer to let him consult with an independent attorney then available outside the courtroom. Although Potack joined Muench's defense at a late date, from his prior representation of Feld he had full knowledge of the basic facts of Muench's case. Muench does not complain of the quality of Potack's efforts on his behalf; indeed, he admits in his brief on appeal that Potack is "an excellent attorney (who) no doubt did his best"

---

2. Foreman and Lewis make the astounding argument that they never entered United States territory because they never attempted to go through customs. The two defendants are mistaken if they believe that the territorial jurisdiction of the United States is defined by the location of its customs counters. Instead, the United States has immediate authority to conduct border searches whenever persons or vessels entering from a foreign jurisdiction cross its geographical boundaries, and such searches need not be conducted at a customs station. *See, e.g., United States v. Saint Prix,* 672 F.2d 1077, 1083 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982);

*United States v. Solmes,* 527 F.2d 1370, 1372–73 (9th Cir.1975). Foreman and Lewis clearly entered United States territory from abroad when their plane from Bolivia entered United States airspace and landed at Kennedy Airport. An attempt to pass through customs, or permanently to remain in the United States, was unnecessary to establish the border crossing.

3. It also was proper as a matter of statutory law. *See* 19 C.F.R. §§ 6.10, 162.5 (1981) and *United States v. Garcia,* 672 F.2d 1349, 1368 n. 31 (11th Cir.1982).

for him. Muench cannot establish a denial of Sixth Amendment rights merely by demonstrating that Cunningham was absent, or that Potack joined his case on the very eve of the suppression hearing. Instead, to prevail Muench must demonstrate that his attorneys represented his interests so ineffectively that his guilty plea was either involuntary or unintelligent. This he has failed to do. Indeed, in light of the substantial evidence against him, and the relatively favorable nature of the plea bargain, Muench might well have congratulated his attorneys on getting him a good deal had not a jury later acquitted Feld. We conclude that Muench received the effective assistance of counsel.

Muench additionally bases his Sixth Amendment claim on a conflict of interest allegedly faced by Potack in representing both Muench and Feld. In seeking dismissal of the indictment and suppression of the cocaine Potack acted in the interests of both Muench and Feld and was not faced with a conflict of interest. The fact that Muench chose to plead guilty, while Feld chose to stand trial, does not establish any conflict of interest. The record does not show that Feld's choice to go to trial caused Muench to plead guilty or that it in any way affected Muench adversely. Moreover, in pleading guilty Muench apparently followed Cunningham's advice, and disregarded Potack's advice that he stand trial. We therefore find it difficult to see how Potack's advice to Muench could have been tainted by an intent to aid Feld at the expense of Muench.

The convictions are affirmed. The mandate shall issue forthwith.