UNITED STATES of America, Appellee,

v.

**Ralph McKENZIE, Defendant, Appellant.**

No. 86–1833.

United States Court of Appeals, First Circuit.

Argued April 6, 1987.

Decided May 13, 1987.

---

Jose A. Fuentes-Agostini, by Appointment of the Court, with whom Troncoso & Fuentes-Agostini, San Juan, P.R., was on brief for defendant, appellant.

Jose R. Gaztambide, Rio Piedras, P.R., with whom Daniel F. Lopez Romo, U.S. Atty., and Jose A. Quiles, Asst. U.S. Atty., Hato Rey, P.R., were on brief for appellee.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Appellant Ralph McKenzie was convicted of violating 21 U.S.C. § 841(a)(1) (1982) (possessing a controlled substance with intent to distribute it), § 952(a) (importing a controlled substance into the United States), and § 955 (possessing a controlled substance on board an aircraft arriving in the United States).

The facts as the jury might have believed them are as follows:

On May 28, 1986 Customs Inspector Roberto Quinones inspected the cargo and baggage of British West Indies Airlines ("BWIA") Flight No. 419 at the Luis Munoz Marin International Airport in Carolina, Puerto Rico. The flight had arrived from Kingston, Jamaica en route to Antigua. Supervisory Customs Inspector Pedro Marrero inspected the front cargo while Quinones inspected the rear cargo.

When an employee of the Airport Aviation Service opened the rear cargo compartment, Quinones observed a blue suitcase at the entrance. As he tried to move it to one side, he noticed that the claim ticket affixed to the suitcase had not been validated in Jamaica. The claim tag had the name of McKenzie. Quinones continued to examine the suitcase feeling both sides and noticed that one side was soft while the other was hard and heavy. The suitcase was secured with a key and a combination lock. Quinones then drilled a hole in the heavy side of the suitcase, and a green substance came out on the tip of the drill. Quinones suspected the substance to be marijuana and notified Marrero. Together they requested the BWIA station manager to attempt to locate the passenger by the name of McKenzie.

After a few minutes the BWIA manager exited the aircraft with Ralph McKenzie who was en route from Jamaica to Antigua. McKenzie admitted that the suitcase was his and opened it at the request of the inspectors. Further examination of the contents of the suitcase revealed a false bottom on one side of the suitcase made of fiberglass. The suitcase was found to contain approximately 35 pounds of marijuana.

McKenzie appeals from his conviction, raising one issue only. He argues that the evidence against him at trial was the product of an illegal search because the customs officers had no authority to search without probable cause the baggage of a citizen of a foreign country who had no intention of entering the United States. We find no merit in this contention.

Customs officials have authority to search not only the baggage of persons entering the United States from foreign countries who intend to remain there, but also that of persons temporarily in the United States "in transit" from one foreign country to another.

Appellant would have us rely on a dictum by the Fifth Circuit in the case of *United States v. Pentapati*, 484 F.2d 450 (5th Cir.1973). In that case the defendant arrived in Miami, Florida from Bogota, Colombia, and while going through customs, was subject to a search which netted cocaine. Defendant alleged he was outside the ambit of the federal laws against narcotics importation because he intended to

depart from the United States immediately. The court upheld the conviction, concluding that "the statute looks to the fact of bringing a controlled narcotic within the territorial jurisdiction of the United States, and not to the alleged importer's subsequent plans." *Id.* at 451. The court went on to say, however,

> We are not faced here with the case of the true in-transit passenger who is never brought under the control of the customs authorities.

*Id.* McKenzie contends this language created what he calls the *Pentapati* exception for purely in-transit passengers. As further support for such an exception, he calls our attention to dicta from the Southern District of Florida in *United States v. Madalone*, 492 F.Supp. 916 (S.D.Fla.1980). While the defendant there fared no better than Pentapati—he, too, was found not to have been a true in-transit passenger—the district court referred to the hypothetical case of someone

> travelling from Mexico to Madrid on a flight which stopped over in Miami to take on additional passengers but which did not permit passengers from Mexico to disembark in Miami. Such Mexico-to-Madrid passengers might never have to pass through United States customs and therefore would have never come under the control of customs authorities.

*Id.* at 919. Appellant insists that since the stopover in Puerto Rico during his flight from Jamaica to Antigua was purely fortuitous, making him a completely in-transit passenger, he was outside the control of United States Customs and beyond the reach both of the search and this criminal prosecution.

■ We see no statutory basis for appellant's claim of exception, and, in regard to a prosecution for the importation and possession of controlled substances, we decline to find such an exception by implication. Two of appellant's convictions were under statutes requiring little else but a showing that a defendant has knowingly brought a controlled substance with him from abroad into the United States (21 U.S.C. § 952(a)) or brought or possessed such a substance while on board an aircraft "arriving in or departing from the United States," 21 U.S.C. § 955). For the purpose of these statutes, "the term United States, when used in a geographical sense, means all places and waters, continental or insular, subject to the jurisdiction of the United States." 21 U.S.C. § 802(27) (Supp. III 1985). The airport where the search and seizure occurred was clearly within the jurisdiction of the United States. No statute has been called to our attention exempting from that jurisdiction such places as transit lounges or the interiors of transiting aircraft. It is established that a controlled substance is imported into the United States if brought within the nation's territorial boundaries. *See, e.g., Palmero v. United States*, 112 F.2d 922 (1st Cir.1940) (the words "import or bring" of the Narcotic Drugs Import and Export Act prohibit bringing the article within the territorial boundaries of the United States—within the waters or upon the lands—and does not require actual landing of the goods (quoting *United States v. Caminata*, 194 F. 903 (D.C.E.D. Pa.1912)); *United States v. Catano*, 553 F.2d 497 (5th Cir.) (a suitcase containing cocaine was found to have been "imported" into the United States, under section 952(a), when removed from an international flight and placed on a carousel at the international airport in Miami, Florida, even though it had not yet passed through customs), *cert. denied*, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977).

■ Appellant's third conviction was for violation of 21 U.S.C. § 841(a)(1), requiring proof of possession with intent to distribute. Although appellant did not, apparently, intend to distribute the narcotics in the United States, the *place* of intended distribution is not important so long as such intent is established together with the fact of possession within the United States. *United States v. Gomez-Tostado*, 597 F.2d 170 (9th Cir.1979). *Accord United States v. Montoya*, 782 F.2d 1554, 1555 (11th Cir. 1986).

The Second Circuit explored the issue before us in detail in *United States v. Muench*, 694 F.2d 28 (2d Cir.1982), *cert.*

*denied,* 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983). In that case DEA agents learned of a scheme through which individuals flying from Colombia to West Germany would smuggle drugs into the latter. The flight would stop in New York where two persons involved in the scheme would board the airplane. When the plane arrived in New York, the agents removed two of the suspects from the plane and escorted them to a lounge considered a "sterile" area where in-transit passengers are not required to go through United States Customs, but may not leave until their plane is ready for reboarding. While the individuals were waiting, customs inspectors removed their baggage from the cargo compartment of the airplane, searched the suitcases and found cocaine. The defendants were convicted of possession of cocaine with intent to distribute under section 841(a)(1).

Defendants in *Muench* claimed on appeal that their indictment should have been dismissed because section 841(a)(1) requires the possessor to pass through United States Customs or permanently remain in the United States, and to intend to distribute the controlled substance within the United States. The Second Circuit rejected the argument that the statute does not apply to possession within the United States territory but outside its customs boundaries using the following rationale:

> an "in-transit" exception to § 841(a)(1) would be inconsistent with the Congressional intent underlying both the statute and the United States drug control laws generally.... *It would be absurd to ignore Congress' expressed intent and hold that international drug dealers who make stopovers in the United States are exempt from the U.S. drug laws as long as they do not attempt to go through U.S. Customs.* Nor do we believe that Congress intended the public to bear the risk of violence that is created by any transportation of illicit drugs.

*Id.* at 32 (citations omitted and emphasis added). The court then when on to say that "the actual possesion on United States territory supplies the jurisdictional nexus...." *Id.* at 33. In a footnote the court concluded that the territorial jurisdiction of the United States is not defined by its customs counters, but by its geographical boundaries. *Id.* at 34 n. 2.

■ We agree with the Second Circuit and adopt its reasoning. Appellant attempts to distinguish *Muench* on the basis that the formation of the conspiracy, as well as other overt acts, had been performed in the United States. However, we do not construe the holding in *Muench* as dependent upon those additional circumstances.

■ Appellant has couched his appeal less in terms of whether he could be convicted of the crime in question than whether he was the subject of a legally permissible customs search. But the two questions are obviously interrelated. Unless specific language in the relevant customs statutes were to compel such a result, it would make little sense to hold that defendant was not subject to a lawful customs search even though he was criminally in possession of contraband within our borders.

■ Customs officers are authorized by statute to search baggage of any

> person arriving in the United States in order to ascertain what articles are contained therein and whether subject to duty, free of duty, or prohibited notwithstanding a declaration and entry therefor has been made.

19 U.S.C. § 1496 (1982). In interpreting the word "arriving" in this section, we have said that it includes involuntary arrivals like an unscheduled stop of an aircraft due to adverse weather even when the passenger had no intent to unlade. *Leiser v. United States,* 234 F.2d 648, 650 (1st Cir.), *cert. denied,* 352 U.S. 893, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956).[1] We believe it likewise

---

[1] In *United States v. Nunes,* 511 F.2d 871, 874 (1st Cir.1975), we said that customs officials had no right to search and seize where the plane was landing no cargo or passengers and was only "pursuing its emergency refueling and its announced intention to depart abroad." We do not find this case persuasive here since McKenzie's flight included a scheduled stop in Puerto

includes planned stops of commercial airplanes whatever their passengers' final destinations.

The relevant United States Customs Service regulation clearly encompasses cases like the one before us.

A customs officer may stop any vehicle and board any aircraft arriving in the United States from a foreign country for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft.

19 C.F.R. § 162.5 (1986).

The seriousness and worldwide nature of the traffic in narcotics, which civilized nations have joined forces to stamp out, as well as the increased burden upon those efforts that recognition of some kind of in-transit exception would create, militate against the exemption appellant seeks. We decline to immunize international travellers who choose to pass through this country, however briefly.

*Affirmed.*

Rico; it had not entered the United States against the wishes of the operators, as a result of an emergency. We regard *Leiser* as the controlling circuit precedent and, insofar as *Nunes* is distinguishable, limit it to its own special facts.