**UNITED STATES of America**

v.

**Maria Luz BEITIA GARCIA.**

**Crim. No. 91–184(GG).**

United States District Court,
D. Puerto Rico.

Oct. 29, 1991.

Daniel F. Lopez Romo, U.S. Atty. Epifanio Morales Cruz, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Frank Inserni, Hato Rey, P.R., for defendant.

### ORDER

GIERBOLINI, Chief Judge.

Maria Luz Beitia Garcia was indicted on May 8, 1991 under 18 U.S.C. § 1001, and 31 U.S.C. §§ 5316, 5322. On July 1, 1991 the defendant moved to suppress: statements she made to U.S. Customs agents in alleged violation of her Fifth Amendment right against self-incrimination; and physical evidence obtained as a result of alleged

violations of her Fourth Amendment right against unreasonable searches and seizures.

On August 20, 1991 the magistrate in his Report and Recommendation (R & R 1), recommended that defendant's motion to suppress the physical evidence be denied in its entirety. He also recommended the denial of the motion to suppress the defendant's statements to the customs agents except for her statement giving the combination to one of her suitcases. The magistrate found the statement regarding the combination to have been elicited from the defendant after she had elected to exercise her right to counsel and thus subject to suppression.

Defendant filed a timely request for a stay of the period for filing a general appeal to R & R 1. The magistrate held a second hearing to reconsider his decision not to suppress the physical evidence resulting from the search of the defendant's purse and its contents at the Quisqueya St. Federal Detention Center. The magistrate issued a second Report and Recommendation (R & R 2) on September 10, 1991 in which he found that the evidence in question was taken into custody and itemized in a "normal, inventory type security search" by the Quisqueya personnel on the evening of April 23, 1991; and the monetary instruments found during the inventory search were given to customs agent Ismael Rodriguez on April 25, 1991 by the detention center personnel. The magistrate recommended that the purse's contents be suppressed since the "seizure" of them by Rodriguez on April 25, 1991 did not fall within any of the exceptions to the Fourth Amendment's warrant requirement.

The defendant and the government both filed appeals to the two Reports and Recommendations, accompanied by supporting memoranda of fact and law. This court has made a de novo determination pursuant to 28 U.S.C. § 636(b)(1)(c) as to those portions of the Reports and Recommendations to which objections have been made.

R & R 1 is hereby approved of in its entirety and adopted as our own, except for that portion modified by R & R 2. We reserve treatment of whether *vel non* the contents of the purse should be suppressed until we discuss R & R 2 below.

■ We find that the search here was a valid routine "border search" which is an exception to the Fourth Amendment's normal requirement of a search warrant, even though the defendant was exiting rather than entering the country. The Supreme Court has never squarely decided the issue as to whether or not border searches of persons and luggage preparing to exit the country fits within the border search exception to the Fourth Amendment search warrant requirement. Supreme Court cases setting forth in broad language the border search exception have all been cases involving either searches of persons and property entering the United States [1], or else dicta in cases not even involving border searches.[2] The broad dicta suggests they would find such exit searches to fit within the border search exception. In *United States v. Ramsey*, 431 U.S. 606, 616–620, 97 S.Ct. 1972, 1978–1981, 52 L.Ed.2d 617 (1977) the Supreme Court stated,

"That searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should, by now, re-

---

1. *United States v. Montoya de Hernandez*, 473 U.S. 531, 532, 105 S.Ct. 3304, 3305, 87 L.Ed.2d 381 (1985) (defendant detained upon entry into U.S. from Columbia), *Ramsey*, 431 U.S. at 609, 97 S.Ct. at 1975 (heroin entering the U.S. via international mail), *United States v. 12 200 Ft. Reels of Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) (films entering U.S. from Mexico), *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (photos seized upon entry into country from Europe).

2. *United States v. Villamonte–Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

quire no extended demonstration." *Id* at 616, 97 S.Ct. at 1978.

The First Circuit in *United States v. Braks*, 842 F.2d 509, 514 (1st Cir.1988) adopted a "no suspicion" standard for evaluating routine border searches, but the case made no distinction between entry and exit border searches. *Braks* involved an entry border search as did the two other First Circuit cases it favorably cited. *See United States v. Kallevig*, 534 F.2d 411 (1st Cir.1976), and *United States v. Stornini*, 443 F.2d 833 (1st Cir.1971) *cited with approval in Braks* at 514. Numerous other 1st Circuit cases have set forth the border search exception in broad terms, but these cases involved entry border searches. *See also United States v. Wardlaw*, 576 F.2d 932 (1st Cir. 1978), *United States v. Emery*, 541 F.2d 887 (1st Cir.1976), and *United States v. Flores*, 477 F.2d 608 (1st Cir.1973).

The First Circuit has held in a related subject area that passengers in transit from one foreign nation to another who stopover in the United States are subject to U.S. narcotics laws while in U.S. territory and their luggage may be subject to search by customs agents. *U.S. v. McKenzie*, 818 F.2d 115 (1st Cir.1987). The search of in-transit passengers has elements of both entry and exit searches since the passenger has recently entered the customs territory of the United States and is also preparing to exit shortly. The *McKenzie* court declined to immunize of U.S. narcotics laws, "international travellers who choose to pass through this country, however briefly." *McKenzie* at 120. We find the policy rationale motivating the *McKenzie* decision is even stronger in our case since the defendant here voluntarily chose to enter the United States and subject herself to federal law and regulations during her stay, as opposed to individuals with no intent to enter the country. *See also Leiser v. United States*, 234 F.2d 648, 650 (1st Cir.1956) (person "arriving" in the U.S. for purposes of customs' search of baggage includes one who arrives involuntarily when adverse weather forces landing).

All federal circuits facing the issue have extended the border search exception to encompass exit searches. *U.S. v. Berisha*, 925 F.2d 791, 795 (5th Cir.1991), *U.S. v. Udofot*, 711 F.2d 831, 840 (8th Cir.1983), *cert. denied*, 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983), *U.S. v. Duncan*, 693 F.2d 971 (9th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983), *U.S. v. Ajlouny*, 629 F.2d 830 (2nd Cir.1980). *See generally* 3 LaFave, Search and Seizure § 10.5(a) n. 8 (2nd edit. 1987). The Ninth Circuit stated the rationale for extension to exit searches as follows:

"[B]oth incoming and outgoing border-crossing searches have several features in common: 1) the government is interested in protecting some interest of United States citizens, such as restriction of illicit international drug trade, 2) there is a likelihood of smuggling attempts at the border, 3) there is difficulty in detecting drug smuggling, 4) the individual is on notice that his privacy may be invaded when he crosses the border, and 5) he will be searched only because of his membership in a morally neutral class." *U.S. v. Stanley*, 545 F.2d 661 (9th Cir. 1976), *quoted in U.S v. Hernandez–Salazer*, 813 F.2d 1126, 1138 (11th Cir. 1987).

The Supreme Court stated in dicta that the border search rationale also applied to exit searches when it upheld the Bank Secrecy Act of 1970 in *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 63, 94 S.Ct. 1494, 1518, 39 L.Ed.2d 812 (1974).

"If reporting of income may be required as an aid to enforcement of the federal revenue statutes, and if those entering and leaving the country may be examined as to their belongings and effects, all without violating the Fourth Amendment, we see no reason to invalidate the Secretary's regulations here." *Id.*

*Shultz* does not govern the issue at bar but provides support for our conclusion that the Supreme Court's prior cases which discuss the border search rationale in terms of those entering the country can be extended to those exiting it.

Many of the same policy rationales justifying entry border searches also apply to exit searches. The policy of keeping contraband from being smuggled into our country is equally furthered by stopping the profits from such enterprises from exit-

ing our country via the same border. Since both incoming and outgoing border searches share similar features this court finds that the Fourth Amendment does not prohibit routine border searches for currency conducted without a warrant. *Accord Berisha* at 795 (5th Circuit upheld exit border search for currency under 31 U.S.C. § 5317(b)). Defendant's motion to suppress the physical evidence obtained from the four suitcases is hereby DENIED.

■ This court declines to adopt R & R 2 which concluded that the purse's contents should be suppressed as a warrantless search under the Fourth Amendment. We agree with the magistrate that the purse's contents were taken into custody pursuant to a normal inventory type search, but disagree with his ultimate conclusion that the custom agent's receipt of the contents two days later violated the Fourth Amendment. We find that the custom agent's actions fit within the inventory search rationale, a well-defined exception to the Fourth Amendment's warrant requirement. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Defendant acknowledges that the April 23rd search at Quisqueya was an inventory search[3], and does not allege that the search was a mere pretext for an investigatory search. The Supreme Court in *Opperman* outlined three distinct purposes that inventory searches serve: protection of the owner's property while it is in police custody, protection of police against claims or disputes concerning lost or stolen property, and protection of police from potential danger. *Id* at 369, 96 S.Ct. at 3097. Since there are valid neutral justifications for the search and there is no indication that the search was a "mere subterfuge for investigation," we find the search to be a valid inventory search. *U.S. v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir.1991).

■ The receipt of the purse's contents by customs agents from Quisqueya officials is valid under the rationale of the inventory search exception to the warrant requirement. So long as the initial purpose for the inventory search was not a pretext for conduct of a criminal investigation, relevant evidence obtained as a secondary result of that inventory search can be used in on-going criminal investigations. *Colorado v. Bertine*, 479 U.S. 367, 369, 107 S.Ct. 738, 739, 93 L.Ed.2d 739 (1987), and *Rodriguez-Morales* at 785. Justice Black noted in *Coolidge v. New Hampshire*, 403 U.S. 443, 509–510, 91 S.Ct. 2022, 2059–2060, 29 L.Ed.2d 564 (1971) (concurring and dissenting 1971),

> "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only '*unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a warrant*, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." *quoted in Opperman*, 428 U.S. at 372, 373, 96 S.Ct. at 3098, 3099 (emphasis added).

This court finds that the receipt of the inventoried items by customs agents on April 25th was a reasonable seizure under the circumstances of this case. *Opperman* at 370, n. 5, 96 S.Ct. at 3097, n. 5. The customs agents themselves could have done a routine search incident to a lawful arrest on April 23rd when they took the defendant into custody at the airport. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Other government agents conducted a valid inventory search at the detention center where the defendant was brought by the customs officials. Once the items were itemized pursuant to a non pretextual inventory search, evidence found relevant to on-going criminal investigations can be used for such investigations. The reasonable search and seizure of evidence by one government agent does not immunize such evidence from later being used by other government agents. Even if the defendant honestly retained a subjective expectation

---

**3.** *See Appeal To Magistrate' Report And Reccomendation [sic] And Memorandum Of Fact And* *Law In Support,* Docket # 38, p. 4.

of privacy in items legitimately searched, seized, inventoried and placed in a safe by government agents, that expectation is not one that "society is prepared to recognize as 'reasonable' ", *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring 1967), under the circumstances of this case.

This court adopts the magistrate's R & R 1 as its own, and rejects his R & R 2. Accordingly we find as follows:

1. defendant's motion to suppress the physical evidence obtained through a valid exit border search of her suitcases is DENIED;

2. defendant's motion to suppress her statement giving the combination of the fourth suitcase to the customs agents is GRANTED; and

3. defendant's motion to suppress the physical evidence obtained through a valid inventory search of defendant's purse is DENIED.

SO ORDERED.

**UNITED STATES of America**