UNITED STATES of America, Appellee,

v.

**Clinton HAYES, Ronald Auth, Steven Black and James Swope, Jr., Appellants.**

No. 79–1572.

United States Court of Appeals, First Circuit.

Argued Feb. 2, 1981.

Decided June 19, 1981.

---

Michael Kennedy, P. C., Gerald B. Lefcourt, New York City, Emilio Soler Mari, Rio Piedras, P. R., Jaime Salas Soler, Santuce, P. R., Bufete Salas Soler, and Sheryl E. Reich, New York City, on brief, for appellants.

Justo Arenas, Asst. U. S. Atty., San Juan, P. R., with whom Raymond L. Acosta, Asst. U. S. Atty., San Juan, P. R., and Mervyn Hamburg, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before CAMPBELL, BOWNES, and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Defendants-appellants Clinton Hayes, Ronald Auth, Steven Black and James Swope, Jr., appeal their convictions of attempted importation of marijuana into the United States, in violation of 21 U.S.C. § 963,[1] and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[2]

On June 5, 1979, the CHARLES M, a United States registered fishing vessel, was boarded by the United States Coast Guard Cutter GALLATIN on the high seas in the Caribbean approximately 110 miles southeast of Cabo Rojo, Puerto Rico. The object of the GALLATIN's cruise was in part to provide cadets with law enforcement experience. The vessel had standing orders allowing it to intercept any registered vessel under 200 feet in length to assure compliance with all United States laws. In the course of its mission, the GALLATIN spotted the CHARLES M, a shrimp boat with a crew of four. The Coast Guard vessel made radio contact with the CHARLES M and was told that its last port of call was Key West, Florida, and that its next port of call would be Key West. The CHARLES M also stated that it had no cargo, had not yet fished, but was headed to the islands to do so. Because the CHARLES M met the requirements of vessels the GALLATIN was permitted to intercept, a boarding party was sent to conduct a safety, documentation and fishing regulations inspection. The captain of the CHARLES M informed the boarding party that his vessel had no documentation. While one member of the boarding party was making informational requests, another was engaged in a routine, cursory search for weapons and persons who might pose a threat to the Coast Guard officers. In the course of this search, an ensign found bales of a green leafy substance in the pilot house, in the forward holds, and on the top deck. The substance on the top deck was plainly visible, though covered with nets. A field test on the samples revealed that the material was

---

1. 21 U.S.C. § 963 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(a)(1) states:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

marijuana. Approximately thirteen tons of marijuana were found on the shrimper. The CHARLES M crew and the vessel were taken to San Juan, Puerto Rico.

A grand jury returned a two-count indictment against defendants Clinton Hayes, Ron Auth, Steven Black and James Swope, Jr. Count I charged each defendant with attempted importation of marijuana into the United States in violation of 21 U.S.C. § 963, and Count II charged possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). After a jury trial, the defendants were found guilty as charged, and all were sentenced to five years on Count I, and five years on Count II, with each period of imprisonment to run concurrently with the other. Execution of the sentences was suspended and each was placed on probation for five years on each count, the probationary periods to run concurrently.

The issues presented on this appeal are: (1) whether the trial court lacked subject matter jurisdiction over the offenses charged; (2) whether the CHARLES M was seized and boarded in violation of the fourth amendment and the fruits of the search should have been suppressed; (3) whether the district court's exclusion of Clinton Hayes' testimony as to his belief in the ultimate destination of the marijuana was erroneous, requiring a new trial; (4) whether the district court should have granted appellants' motion for a new trial on the ground the Government's summation was confusing, erroneous and prejudicial;

(5) whether the district court should have granted appellants' motion for judgment of acquittal; (6) whether the district court should have granted a new trial because the weight of the evidence was insufficient to sustain the convictions; and (7) whether the district court erred in refusing to instruct the jury that it was required to find that the defendants intended to distribute the marijuana into the United States, an issue pertaining exclusively to Count II. We consider first the issues with regard to Count I—attempted importation.

■ At the outset, we reject appellants' argument that the trial court lacked subject matter jurisdiction over the offenses charged. We reiterate our ruling that a "sovereign may exercise jurisdiction over acts done outside its geographical jurisdiction which are intended to produce detrimental effects within it." *United States v. Arra*, 630 F.2d 836, 840 (1st Cir. 1980). There can be no question but that the district court had jurisdiction as to Count I.

■ We address next appellants' claim that the CHARLES M was seized and boarded in violation of the fourth amendment and, therefore, the district court erred in not suppressing the fruits of the search. In *United States v. Hilton*, 619 F.2d 127 (1st Cir.), *cert. denied,* 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980), this court sustained the Coast Guard's authority pursuant to 14 U.S.C. § 89(a)[3] to conduct safety and document investigations on American flag vessels located in international waters. We conclude that "the limited intrusion

---

**3.** 14 U.S.C. § 89(a) provides:

(a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquires, examination, inspection or search it appears

that a breach of the laws of the United States rendering a person liable to arrest is being, or had been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

represented by a document and safety inspection on the high seas, even in the absence of a warrant or suspicion of wrongdoing, is reasonable under the fourth amendment." *Id.* at 131. The search here was within the scope of Coast Guard authority. Once on board and in the routine course of inspection, a member of the boarding party found marijuana in plain view. The Coast Guard did not proceed beyond the bounds of its inspection authority. Appellants challenge the Coast Guard's rationale for boarding the vessel, charging that it was simply a pretext to find contraband. Our concern, however, is not with motive or subjective intention:

> Ascertaining the real motivation or suspicions of the officer who orders any one of these numerous inspections would prove intractable. Thus, rather than looking into the minds of the officers, we will concentrate on their actions.

*United States v. Arra*, 630 F.2d at 846. The actions of the Coast Guard were not improper and we rule that there was no fourth amendment violation.

Appellants' contention that the trial court erred to their prejudice by excluding certain testimony of defendant Hayes presents a thornier problem. The gravamen of appellants' defense was that they did not intend to import or introduce marijuana into the United States, or to otherwise violate the laws of the United States. To that end, they sought to introduce testimony that Captain Hayes thought that the marijuana was destined for Europe. Following is the relevant colloquy:

BY MR. KENNEDY [Captain Hayes' attorney]:

Q What was the ultimate destination of the mother ship?

A Well, it was going—

Mr. QUILES [the United States attorney]: Objection.

THE COURT: Sustained. That answer is stricken from the record.

BY MR. KENNEDY:

Q Again, if there's an objection, you must stop immediately and let his Honor rule.

Did you have a conversation with Mr. Cruz at any point as to the ultimate destination of the marijuana?

MR. QUILES: We object.

THE COURT: Sustained.

MR. KENNEDY: May I know the basis so that I can frame my next question?

THE COURT: I think you're experienced counsel and I think I don't have to explain the ruling.

MR. KENNEDY: The Court is denying to explain to me the basis?

THE COURT: I have sustained the objection.

MR. KENNEDY: I see.

BY MR. KENNEDY:

Q Did you know in your own mind where the marijuana was going ultimately?

A Yes, sir.

Q Where?

A To Europe.

MR. QUILES: If that is because he was told, then we have an objection to his answer.

THE COURT: If you wish, you may voir dire now, or I will strike the answer at this time.

BY MR. QUILES:

Q Mr. Hayes, do you know that from your own knowledge or because you were told?

A What I was told.

MR. QUILES: Then, I have a motion to strike, Your Honor.

THE COURT: The motion is granted. The answer as to the destination of the marijuana from information that he received is stricken from the record as being hearsay and it is not appropriate evidence and should not be considered in any way by the jury.

■ In its opinion, 479 F.Supp. 901, 915 (D.P.R.1979), the district court noted that the defendants did not argue at trial or at the hearing on their post-trial motions that the statements were admissible under one of the exceptions to the hearsay rule. Appellants ground their contention on Rule

402 which states in pertinent part that "[a]ll relevant evidence is admissible, except as otherwise provided." Fed.R.Evid. 402. They argue that defendants' belief as to the destination of the marijuana was offered to negate any possible finding of intent—an element of both counts—and thus was admissible. We conclude that the exclusion of Hayes' testimony was error because it was offered to show Hayes' intent and not to "prove the truth of the matter asserted." But, while the statements were relevant to and could support the defendants' defense, their exclusion did not result in such prejudice as to require a new trial. Appellants were not precluded from presenting the defense before the jury that they did not intend to import marijuana into the United States. Captain Hayes was given ample scope to testify how he was recruited by a man named Cruz, who directed him to deliver the marijuana to a "mother ship" on the Saba Bank, and to develop the details of the planned delivery. The record consists of many references claiming that the cargo was not intended for the United States. The following exchange between counsel and defendant Hayes is a representative example:

Q Did anyone at anytime tell you—don't tell us what they said, but did anyone at anytime tell you the ultimate destination of the marijuana?

A Yes, sir.

Q Who told you that?

A Mr. Cruz.

Q When?

A When I first told him that I would do it. When we discussed the possibility of me doing it.

Q And, did you, sir, at anytime intend to bring marijuana into the United States?

A No, sir.

Q Did you, sir, at any time intend to distribute or give that marijuana to anyone intending to bring it into the United States?

A No, sir.

■ We next consider appellants' contention that the trial court should have granted their motions for judgment of acquittal made at the end of the Government's case and at the close of all the evidence. At issue is whether the Government proved that the appellants acted with the necessary intent. This court has held that "[u]pon review of a district court's denial of a motion for a judgment of acquittal we must determine whether a rational juror drawing reasonable inferences ... from the evidence viewed in the light most favorable to the government ... could have found guilt beyond a reasonable doubt." *Villarreal Corro v. United States*, 516 F.2d 137, 140 (1st Cir. 1975). To prove intent, the Government may rely upon circumstantial evidence. *United States v. Brown*, 603 F.2d 1022, 1024 (1st Cir. 1979); *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978).

■ Based on the evidence, the jury could have found beyond a reasonable doubt all of the elements of the crime. At the end of the Government's case, it was undisputed that the four defendants, all Americans, were arrested aboard a United States registered commercial fishing vessel containing thirteen tons of marijuana.

The ship had departed the United States mainland and was seized approximately 110 miles south of Puerto Rico headed in a northeasterly direction, on a course which, according to some of the testimony, could have brought it near the eastern end of Puerto Rico. When first stopped, its crew reported that the vessel planned to fish in the islands and then return to its home port of Key West, Florida. There were limited supplies of food and fuel on board—about enough to enable the ship to return to Florida but not much more. From all this, the jury could reasonably have found that the vessel was to return to Florida with its cargo, or to unload the marijuana in Puerto Rico and then return home.

The evidence of guilt was even stronger at the close of the defendants' case. Hayes testified that he and his crew were to be paid $110,000 for transporting the marijuana. The jury could reasonably have found it unlikely that a vessel and crew based in

Key West would be hired at such a price simply to haul the cargo from Colombia to a mother ship waiting in the Caribbean Sea. Hayes also testified that the source of payment was in the United States and that payment was to be made in United States currency. When asked whether the vessel did not have a chart showing its alleged course to the Saba Bank, Hayes responded that it did but that the chart was thrown overboard following contact with the Coast Guard. Finally, while Hayes testified that he intended to fish his way back to Key West after unloading the marijuana, there was evidence that the fishing equipment on the CHARLES M was in a state of disrepair and that there was no ice, sawdust, or equipment for cleaning or conserving fish on board.

In evaluating appellants' claim that the weight of the evidence was insufficient to sustain the convictions, we must review the facts and all the reasonable inferences to be drawn from them in the light most favorable to the Government. *See Hawkins v. Hall*, 644 F.2d 914 at 915 (1st Cir. 1981); *United States v. Doran*, 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974). In light of the aforementioned facts, we cannot conclude that the jury determination was against the weight of the evidence.

First, we reject appellants' argument that the trial court should have granted their motion for a new trial because the Government's summation was confusing, erroneous and prejudicial. Appellants contend that the prosecutor's statements about the destination of the ship and to the effect that the CHARLES M was "for all purposes the equivalent of a piece of the United States" were so prejudicial as to require a new trial. Such remarks, they allege, were inconsistent with the court's ruling with respect to Count I that the jury must find that the ship was going to the United States. Our review of the record, however, shows that the Government's summation was not inconsistent with the court's instructions as to Count I. With respect to

that count, the prosecution stated that attempt "means that they [defendants] were trying to import marijuana into the United States." While it would have been better if the prosecutor had not trespassed into the court's domain, the confusion and prejudice caused thereby, if such there was, was minimal.

Turning to Count II—possession of marijuana with intent to distribute—we observe at the outset that each defendant received sentences of five years probation to be served concurrently with that imposed as to Count I. Although we could dispose of the case on the concurrent sentence doctrine,[4] *Vanetzian v. Hall*, 562 F.2d 88, 90 (1st Cir. 1977), we think it necessary to decide the legal issue involved. Both the prosecutor and the court were under a misapprehension as to the use of the "law of the flag" principle and Puerto Rico's location in the cross-currents of the drug trade mean that this type of case will likely arise again.

█ In his closing argument, the United States Attorney stated:

Now as to count number 2, really there should not be a problem there. That ship is a piece of territory of the United States and you know the captain of that ship is the master. So they, the minute they put on board that ship 13 tons of marijuana, they were in possession with the intent to distribute because under no stretch of the imagination can you say it's for their own consumption. In fact, he said so, "We were going to distribute it." The only quarrel he had was, "We were not going to distribute it in the United States." I will have more on that. But the minute they put that on that ship, they were possessing with the intent to distribute.

I ask you to look at the instructions of the Judge. The charge is possession with the intent to distribute. As long as you have that marijuana in a piece of territory of the United States, even if that territory is floating, you have committed the offense. You may have intended to

---

4. The Government has not suggested such an approach.

distribute it in China, that does not make a difference under the law if the evidence convinces you that possession was for the intent to distribute and that possession was in the United States.

The prosecutor thus sought to apply the "law of the flag" theory to the case at hand. *See, e. g., Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *United States v. Flores*, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933). The law of the flag theory holds that a ship is constructively a floating part of the flag-state, that it is deemed to be part of the territory whose flag it flies and that the state has jurisdiction over offenses committed aboard the ship. *See Lauritzen v. Larsen*, 345 U.S. at 585, 73 S.Ct. at 929. Although the charge itself did not specifically embrace the Government's law of the flag theory, the district court did not disavow it. At the bench conference following the charge, the court stated:

> Under count 2—I will save you some time and I will state on the record that the Court ruled that in its opinion, under the law of the flag theory, being this an American flag vessel, the possession with the intent to distribute is a crime by the mere establishment of the possession and the establishment of intent to distribute, even though distribution may be for foreign consumption.

 It is clear that the "law of the flag" theory gives Congress the power to make possession of a controlled substance in an American vessel on the high seas a crime. The issue here is whether Congress has done so. The district judge, interpreting Count II at the bench conference, stated that the statute allowed conviction of crew members for possessing marijuana with an intent to distribute it *anywhere*—even in a foreign country.[5] We believe, however, that 21 U.S.C. § 841(a)(1), which makes possession with intent to distribute a crime, does not apply to American vessels on the high seas unless the "intent to distribute" is an intent to distribute *in the United States.*

In reaching this result, we note, first, that the statutory provision itself made no mention of whether it applies only in the territorial United States or on the high seas as well. Thus, we must determine from the legislative history and the nature of the offense whether one can *infer* a Congressional intent that the provision apply to ships on the high seas. *United States v. Bowman*, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922).

Second, a predecessor provision to the one here at issue, enacted in 1941, *expressly* made it a crime to possess a controlled substance on the high seas. 21 U.S.C. § 184(a) (repealed 1970). In 1970 when Congress enacted the Comprehensive Drug Abuse Prevention and Control Act, Pub.L. No.91–513, 21 U.S.C. *et seq.*, it repealed that provision and failed to substitute a similarly explicit provision. It is unclear whether the omission was intended. S.Rep. No.96–855, 96th Cong., 2d Sess. 1, *reprinted in* [1980] U.S.Code Cong. & Ad.News .2785. In any event, another provision of the 1970 statute, making it a crime to manufacture or distribute a controlled substance for purposes of unlawful importation into the United States *expressly* applies to extraterritorial activity. *See* 21 U.S.C. § 959. The related provision before us contains no such *express* statement.

Third, in interpreting the provision, we should not, in the words of Learned Hand, "impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences within the United States." *United States v. Aluminum Co. of America*, 148 F.2d 416, 443 (2d Cir. 1945).

These three considerations lead us to the same conclusion reached by the Fifth Circuit in *United States v. Baker*, 609 F.2d 134, 139 (5th Cir. 1980). We hold, as did that court, that

> so long as it is clear that the intended distribution would occur within the terri-

---

5. The district court refused to grant defendants' proposed instruction that the jury be charged as follows: "In order to convict the defendants of Count II, you must find that the

defendants possessed the marijuana with the specific intention of distributing *it in the United States." United States v. Hayes*, 479 F.Supp. 901, 916 (D.P.R.1979) (emphasis supplied).

torial United States . . . jurisdiction may be maintained, [under 841(a)(1)] where defendants are apprehended outside the territorial waters . . . .

*Id.* at 139.[6] Where distribution is intended elsewhere, however, the provision does not apply. *Id.*[7]

Others who have studied this provision have also concluded that § 841(a)(1) would not apply in a case such as this one. Thus, the Department of Justice[8]—and the Drug Enforcement Administration[9]—testified before Congress on proposed legislation enacted in 1980 that the provision at issue here (unfortunately, in their view) did not apply to American ships on the high seas. Congress accepted that view, noting, for example, that the 1970 law "inadvertently contained a section repealing the criminal provision under which drug smugglers apprehended on the high seas were prosecuted without creating a new provision to replace it." S.Rep.No.96–855, *supra,* at 1, U.S.Code Cong. & Admin.News 1980, p. 2785. And, Congress enacted a new provision that *expressly* applies to those who possess controlled substances in American vessels on the high seas, 21 U.S.C. § 955a; this new law does *not* require proof of intent to distribute within the United States.[10] This case, however, was brought under the 1970 Act.

 The correct approach would have been to view Count II as a necessary corollary of Count I—attempt to import into the United States. If defendants were attempting to import the marijuana into the United States, they must have intended to distribute it after it was so imported. Indeed, if it were not for the United States Attorney's statements and the failure of the court to specifically reject them, we think the charge would have stood muster. The court correctly instructed on attempt to import. The instruction on Count II did not state specifically that intent to distribute could be proven by intent to distribute in a foreign country. The jury could have understood the charge to mean that Count II was charging the defendants with intent to distribute within the United States. That, of course, is the common sense understanding of the indictment.

Because of the United States Attorney's erroneous statement of the law as to Count II, and the failure of the court to correct it, we must reverse as to that count.

*Affirmed in part, reversed in part.*

## ORDER OF COURT

The petition for rehearing is denied. Petitioners' quarrel is with *United States v. Arra,* 630 F.2d 836 (1st Cir. 1980), whose principles apply and which we reaffirm. *See particularly* n. 12 at 845.

The suggestion for rehearing en banc is denied.

---

6. We have already indicated that possession on the high seas with intent to distribute in the United States is a crime. *United States v. Arra,* 630 F.2d 836, 840 (1st Cir. 1980).

7. The Ninth Circuit had held in a case where possession of the drug was in the United States that it was immaterial whether the offender intended to distribute it elsewhere. *See United States v. Gomez Tostado,* 597 F.2d 170, 172–73 (9th Cir. 1979). This may well be so, but we think that where possession occurs on the high seas, an intent to distribute in the United States is required.

8. *Coast Guard Drug Interdiction: Hearings on H.R. 10371 and H.R. 10698 Before the Subcomm. on Coast Guard and Navigation of the*

*House Comm. on Merchant Marine and Fisheries,* 95th Cong., 2d Sess. 166, 169 (1978) (statement of W. Gordon Fink).

9. *Stopping "Mother Ships"—A Loophole in Drug Enforcement: Hearings on S. 3437 Before the Subcomm. to Investigate Juvenile Delinquency of the Senate Comm. on the Judiciary,* 95th Cong., 2d Sess. 40, 42 (1978) (statement of Peter Bensinger).

10. H.R.Rep.No.323, 96th Cong., 1st Sess. 10 (1979); 125 Cong.Rec.H. 6380 (daily ed. July 23, 1979) (remarks of Rep. McCloskey).