**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles E. LARSEN, Defendant–Appellant.**

No. 90–50640.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided Dec. 20, 1991.

Ronald Muntean, Law Offices of Ronald Muntean, Los Angeles, Cal., for defendant-appellant.

Robert L. Brosio, Asst. U.S. Atty., Chief Crim. Div., Jacqueline Chooljian, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, ALARCON and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Charles Edward Larsen was convicted for his involvement in an international marijuana smuggling operation in violation of 18 U.S.C. §§ 2, 371, 1952(a)(3) and 21 U.S.C. §§ 841(a)(1), 846, 963, 952. Larsen challenges the legality of his conviction on numerous grounds, including the court's extraterritorial application of 21 U.S.C. § 841(a)(1). We affirm.[1]

Larsen's conviction was based on evidence which established that he, along with codefendants and numerous other individuals, conspired to import shipments of Southeast Asian marijuana into the United States from 1985 to 1987, and to distribute the marijuana in the United States. The profits from these ventures were concealed by a fictitious partnership created by the defendant and others. This partnership was used to purchase the shipping vessel intended to transport the marijuana. During some of the smuggling operations, Larsen served as captain of the vessel.

Under Count Eight, Larsen was convicted of aiding and abetting codefendant Walter Ulrich in the crime of knowing and intentional possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The marijuana was seized by customs inspectors from a ship on the high seas outside of Singapore. Larsen claims that the district court erred when it denied his motion to dismiss Count Eight because

---

1. The other grounds upon which Larsen challenges his conviction are discussed in a separate memorandum disposition.

21 U.S.C. § 841(a)(1) does not have extraterritorial jurisdiction. A district court's jurisdiction is a matter of law, and reviewed *de novo*. *United States v. Davis*, 905 F.2d 245, 248 (9th Cir.1990), *cert. denied, Davis v. United States*, — U.S. —, 111 S.Ct. 753, 112 L.Ed.2d 773 (1991).

Congress is empowered to attach extraterritorial effect to its penal statutes so long as the statute does not violate the due process clause of the Fifth Amendment. *United States v. Cotten*, 471 F.2d 744, 749 (9th Cir.), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973); *Davis*, 905 F.2d at 248. There is a presumption against extraterritorial application when a statute is silent on the matter. *Cotten*, 471 F.2d at 750. However, this court has given extraterritorial effect to penal statutes when congressional intent to do so is clear. *Chua Han Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir.1984), *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). Since 21 U.S.C. § 841(a)(1) is silent about its extraterritorial application, we are "faced with finding the construction that Congress intended." *Cotten*, 471 F.2d at 750.

The Supreme Court has explained that to limit the *locus* of some offenses "to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home." *United States v. Bowman*, 260 U.S. 94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922). Congressional intent to attach extraterritorial application " 'may be inferred from the nature of the offenses and Congress' other legislative efforts to eliminate the type of crime involved.' " *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir.1990) (quoting *United States v. Baker*, 609 F.2d 134, 136 (5th Cir.1980)).

Until now, the Ninth Circuit has not applied this "intent of congress/nature of the offense test" to 21 U.S.C. § 841(a)(1); however, four other circuits have. They all held that Congress did intend the statute to have extraterritorial effect.

The Fifth Circuit held that Congress intended that 841(a)(1) have extraterritorial effect because it was a part of the Compre-hensive Drug Abuse Prevention and Control Act of 1970, and the power to control illegal drug trafficking on the high seas was an essential incident to Congress' intent to halt drug abuse in the United States. *United States v. Baker*, 609 F.2d at 137 (referring to the Comprehensive Drug Abuse Prevention and Control Act of 1970, § 101, 21 U.S.C.A. § 801; H.R.Rep. No. 1444, 91st Cong., 2d Sess. *reprinted in* 1970 U.S.Code Cong. and Admin.News 4566, 4567).

The Third Circuit held that Congressional intent to apply 841(a)(1) extraterritorially could be implied because "Congress undoubtedly intended to prohibit conspiracies to [distribute] controlled substances into the United States ... as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of illegal narcotics.... To deny such use of the criminal provisions 'would be greatly to curtail the scope and usefulness of the statute[ ].' " *United States v. Wright–Barker*, 784 F.2d 161, 167 (3d Cir.1986) (quoting *Bowman*, 260 U.S. at 98, 43 S.Ct. at 41).

The First Circuit concluded that the district court had jurisdiction over a crime committed on the high seas in violation of 841(a)(1) because "[a] sovereign may exercise jurisdiction over acts done outside its geographical jurisdiction which are intended to produce detrimental effects within it." *United States v. Arra*, 630 F.2d 836, 840 (1st Cir.1980); *accord United States v. Hayes*, 653 F.2d 8, 15–16 (1st Cir.1981) (jurisdiction may be maintained under § 841(a)(1) provided that distribution was clearly intended within the territorial United States).

The Second Circuit similarly held that "because section 841(a)(1) properly applies to schemes to distribute controlled substances within the United States," its extraterritorial application was proper. *United States v. Orozco–Prada*, 732 F.2d 1076, 1088 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984).

Extraterritorial application of a drug possession/distribution statute comports with the reasoning behind the Supreme Court's

*Bowman* decision, since such a statute is "not logically dependent on [its] locality for the Government's jurisdiction, but [was] enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated" and "[i]t would be going too far to say that because Congress does not fix any *locus* it intended to exclude the high seas in respect of this crime." *Bowman,* 260 U.S. at 98–99, 43 S.Ct. at 41.

Defendant claims that Congress intended to limit section 841(a)(1) to only territorial crimes, as demonstrated by its later enactment of 21 U.S.C. § 955c, recodified at 46 U.S.C.App. § 1903, which expressly confers jurisdiction over the high seas in cases dealing with controlled substance possession and distribution. Defendant implies that in providing a separate statute which expressly governs the high seas, Congress acknowledged that the former statute did not.

If the two statutes had precisely the same provisions, beyond the extraterritoriality issue, defendant's argument might have some merit. However, there are other differences between the statutes that can explain Congress' intent in enacting § 1903. For example, § 1903 does not require *intent* to distribute, as does § 841(a)(1). Recognizing this, the Second Circuit held that Congress did not enact § 1903 to fill a void left by the silence in § 841(a)(1) as to its extraterritorial effect but, rather, to extend drug possession/distribution laws to those cases where it was not possible to show intent to distribute. *Orozco–Prada,* 732 F.2d at 1087–88; *see also United States v. Cruz–Valdez,* 743 F.2d 1547, 1552 (11th Cir.1985) ("a review of the legislative history accompanying [1903] reveals no intention by Congress to make [it] the sole statute for prosecution within the customs waters or to curb the use of § 841 ... in those circumstances" since "[d]ifferences in the statutes and their interpretation might lead the government to apply the statutes differently.")

Furthermore, as the Eleventh Circuit pointed out in a case dealing with a related

matter, there is an enhanced penalty available for crimes charged under § 841(a)(1) which is not available under 1903.[2] *Cruz–Valdez,* 743 F.2d at 1552.

Larsen cites to a passing reference in *Hayes* which stated that Congress accepted the views of representatives from the Department of Justice and the DEA who testified that the Comprehensive Drug Abuse Prevention and Control Act of 1970 did not apply to American ships on the high seas. *Hayes,* 653 F.2d at 16. While the *Hayes* court acknowledged that some might conclude that § 841(a)(1) does not apply extraterritorially because of this Congressional testimony, the court nevertheless held that § 841(a)(1) did have extraterritorial application. *Id.* at 15–16.

In affirming Larsen's conviction, we now join the First, Second, Third, and Fifth Circuit Courts in finding that 21 U.S.C. § 841(a)(1) has extraterritorial jurisdiction. We hold that Congress' intent can be implied because illegal drug trafficking, which the statute is designed to prevent, regularly involves importation of drugs from international sources.

AFFIRMED.

---

**2.** The difference is fifteen years, rather than five, in cases involving a quantity of marijuana exceeding 1000 pounds. 21 U.S.C. § 841(b)(6).