**UNITED STATES of America,**

v.

**Andrea CAFIERO Defendant.**

**No. 02–CR–10213–MEL.**

United States District Court,
D. Massachusetts.

Jan. 28, 2003.

James W. Lawson, Oteri, Weinberg & Lawson, Boston, for Andrea Cafiero (1), Defendant.

Kim West, United States Attorney's Office, Boston, for U.S. Attorneys.

## MEMORANDUM AND ORDER

LASKER, District Judge.

This is a case about the bounds of extraterritorial jurisdiction. On June 5, 2002, Andrea Cafiero, an Italian citizen, boarded an Air Europe flight in Cancun, Mexico bound for Rome, Italy. This was a direct flight with no scheduled stops. Unfortunately for Cafiero, however, the plane made an unscheduled landing at Logan Airport in Boston, Massachusetts. Upon arrival in the United States, Cafiero was taken to the State Police barracks at the airport. Once there he was searched and the Massachusetts State Police found a "large black taped package in Cafeiro's right front pocket." (Stipulation of Facts, pp. 2,3.) This package contained over 180 grams of cocaine. Another small bag of cocaine was found in Cafiero's pants pocket weighing .39 grams. (*Id.*)

After some setbacks (described below), the United States obtained the instant indictment charging Cafiero in Count One with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and in Count Two with possession of cocaine in violation of 21 U.S.C. § 844(a).

Cafiero has filed two motions: he moves to dismiss the indictment for lack of subject matter jurisdiction, and alternatively, for failure to state an offense. In a separate motion, Cafiero moves, pursuant to the Fourth Amendment of the Constitution, to suppress all evidence seized from his person without warrants on June 5, 2002, as well any and all derivative fruits thereof. The motions are GRANTED.

## I. Facts

The parties have stipulated to the following facts. As noted above, on June 5, 2002, Cafiero boarded an Air Europe flight in Cancun, Mexico, destined for Rome, Italy, without any scheduled stops. Aboard the flight, Cafiero became "disruptive and unruly." Eventually, an altercation occurred between Cafiero and the passenger next to him, which involved the two entering the galley area of the airplane. Hoping to assist, and possibly stop the spat, another passenger and some crew members intervened. As a consequence of the brawl, two passengers and one of the crew members, Nardo Pedalino, were struck.

After getting hit, Pedalino entered the cockpit to alert the Captain, Maurizio Guzzetti, of the problematic passenger, Cafiero. Guzzetti agreed to speak to Cafiero, but as he exited the cockpit Cafiero approached him and another altercation began, which resulted in Guzzetti hitting Cafiero with his fist. This knocked Cafiero to the floor of the plane. Guzzetti then asked the flight crew to tie extension belts around Cafiero's hands and feet. In spite of the fact that he was essentially "hogtied," Cafiero continued to be "unruly." Apparently two people sat in parallel seats and kept their feet on Cafiero's body to further restrict his movements until the plane landed.

More than eight hours remained until the flight was to reach Rome, yet Cafiero's belligerence did not weaken; thus, worried about Cafiero's unpredictable behavior, Guzzetti resolved to make an emergency landing and to divert the plane to Logan Airport, although New York City was closer. He contacted the New York Air Traffic Control Center regarding his request, and a representative provided him with a flight plan. The United States Air Traffic Control then contacted the Northeast Air Defense, which decided to escort the Air

Europe flight to Boston with two F-15 fighter jets.

Forty-five minutes later, the plane landed in Boston. According to the law enforcement officers present upon landing—both Federal Bureau of Investigation officers and Massachusetts State Troopers—as the cockpit doors opened the flight crew pushed an unruly Cafiero off of the airplane. The state police took Cafiero into custody immediately, and conducted what they characterize as an inventory search. At this point the police found the black taped package on Cafiero, which tests revealed contained over 180 grams of cocaine.

Cafiero claimed that his chest, arm and side were injured by the flight crew and passengers' rough-handling. In response the police transported him via ambulance to Massachusetts General Hospital for tests. The medical test results showed that Cafiero was inebriated, but that he did not have any significant injuries. From the hospital Cafiero was transferred to the United States Courthouse, where another small bag of cocaine was found in his pants' pocket, amounting to .39 grams.

## II. Magistrate Judges' Actions

On June 5, 2002, Cafiero initially appeared before Magistrate Judge Alexander on charges of knowingly and intentionally possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Upon review of Cafiero's finances, the Court appointed Attorney James Lawson to represent him, and on June 14, 2002, a probable cause and detention hearing was held. On June 24, 2002, Judge Alexander ruled that there was not probable cause to

believe that Cafiero possessed cocaine *with the intent to distribute the drug in the United States* (emphasis added), and dismissed the complaint. The next day, June 25, 2002, the government returned to court with a new complaint charging Cafiero with simple possession of cocaine in violation of 21 U.S.C. § 844. This time the parties appeared before Magistrate Judge Collings, who held that Cafiero could be prosecuted for simple possession of cocaine regardless of the fact that his presence in the United States was involuntary. Thereafter, the government obtained the instant indictment charging Cafiero with both simple possession and possession with intent to distribute.

## III. Cafiero's Motion to Dismiss

Cafiero's motion to dismiss revisits the issues presented before Magistrate Judges Alexander and Collings. In essence, the question is whether the United States can assert subject matter jurisdiction over an Italian citizen, whose presence in the United States at the time of the alleged offense was involuntary, and subject him to the United States criminal justice system. The prior opinions pave the way towards a decision each grounded in reason yet reaching conflicting conclusions.[1]

Cafiero contends that since he "neither intended to distribute cocaine in the United States nor voluntarily or intentionally possessed cocaine in the United States, [his] offense, if he committed one, was an extraterritorial offense over which the courts of the United States do not have subject matter jurisdiction." (Cafeiro's Memo. p. 3). The government responds that it has the authority to prosecute Ca-

---

1. Of course, one can adopt Magistrate Judge Collings' conclusion that the elements of the crime of possession with intent to distribute entails a heightened intent to actually distribute narcotics in the United States, while the crime of simple possession lacks this geo- graphic specificity. However, the distinction is overly formulaic. Read together the Magistrate Judges' opinions do not resolve the question as to the United States extraterritorial jurisdiction.

fiero for crimes that he ultimately intended to commit in another country, because he did in fact possess cocaine in the United States with the intent to distribute (albeit somewhere else).

### IV. Legal Analysis
#### A. The "In–Transit" Cases

The parties agree that this case is one of first impression in the federal courts. There are, however, two lines of cases that can provide guidance. The first group involves so-called "in-transit" passengers—individuals aboard international flights with *scheduled* stops in the United States. The First Circuit has established that even if an "in-transit" passenger did not intend to distribute narcotics in the United States and was merely "passing through" its borders, the passenger essentially waived his or her objections to extraterritorial jurisdiction when knowingly boarding a flight scheduled to stop in the United States. *See e.g., United States v. McKenzie*, 818 F.2d 115 (1st Cir.1987).

Not surprisingly, the government and Magistrate Judge Collings point to the "in-transit" cases to support their contention that it is immaterial whether Cafiero intended to come to the United States.[2] The government asserts that Cafiero's presence in the United States (for whatever reason), with contraband, endows the United States with subject matter jurisdiction to prosecute him for possession of cocaine and possession with intent to distribute cocaine.

In support of its assertion that Cafiero is not outside its prosecutorial jurisdiction,

the government cites *United States v. McKenzie*, 818 F.2d 115 (1st Cir.1987), which affirmed the United States' authority to prosecute a foreigner traveling from Jamaica to Antigua with a scheduled stopover in Puerto Rico. McKenzie was charged with possession of narcotics with intent to distribute and importation, and the Court rejected his challenge to United States jurisdiction on the grounds that he had no intent to sell drugs in the United States, and was therefore outside the control of United States Customs. The First Circuit concluded that "the place of intended distribution is not important so long as such intent is established together with the fact of possession within the United States." *McKenzie*, 818 F.2d 115, at 119 (citations omitted). Significantly, the *McKenzie* decision closed by noting, "[w]e decline to immunize international travelers who *choose* to pass through this country, however, briefly." 818 F.2d 115 at 119. (emphasis added).

Further, in what is perhaps the strongest language in support of the government's position, the First Circuit again rejected an in-transit passenger's argument that to prosecute her for importation of drugs into the United States, pursuant to 21 U.S.C. § 952(a), the government must first prove that she knew she would be coming to the United States, not simply that she boarded a flight destined for the United States. *United States v. Mejia–Lozano*, 829 F.2d at 271–(1st Cir.1987). The court held:

> Passing the obvious question of the knowledge properly inferable to a drug

---

**2.** In denying Cafiero's motion to dismiss the simple possession complaint, Magistrate Judge Collings also relied on *Leiser v. United States*, 234 F.2d 648, (1st Cir.1956) (international flight diverted to Boston due to weather, defendant charged with knowingly smuggling contraband into the United States without making mandated declarations to customs authorities). The precedential value of *Lesier* is limited and therefore, not discussed in the text, because it involved a customs offense, namely, Leiser's deliberate decision once he was within the United States to commit the crime of falsely completing his customs declaration.

courier who boards an international flight with a regularly scheduled stopover in the United States, we find the appellant's premise ill-considered. 21 U.S.C. § 952(a) does not require the sort of specific intent that Mejia–Lozano assumes. It is sufficient that the defendant knowingly possessed the contraband, and brought it into the jurisdiction of the United States.

*Mejia–Lozano,* 829 F.2d 268, at 272. In dicta, however, the *Mejia–Lozano* court also stressed that the defendant "selected the flight," and that "she boarded it without demonstrable duress." *Id.* at 272.

To summarize the First Circuit gloss on "in-transit" cases, a passenger on board an international flight with a scheduled stopover in the United States, carrying narcotics, can be prosecuted for possession with intent to distribute and or importation of narcotics. As Magistrate Alexander remarked in her June 24, 2002, memorandum and order, defendants in such cases where federal courts have properly exercised jurisdiction to prosecute international travelers share certain critical characteristics. First, their presence in the United States is willful, as they boarded flights with scheduled stops in the United States. Second, many of the cases concern defendants whose contraband is searched and seized by the United States customs agency—an established government agency authorized to make such border stops and investigations.

Third: the deliberate choice of traveling through the United States undercuts a defendant's challenges to federal jurisdiction. In effect, the courts construe a defendant's boarding a flight destined for the United States, however briefly and however conditionally, as a constructive waiver. This reasoning appears to be a policy consideration, and stands for the rule that those who willfully cross United States borders cannot meritoriously object to prosecution under the laws of the United States.

## B. The "High–Seas" Cases

The second line of relevant cases is the so-called "high seas" cases. These cases deal with the question whether the United States may assert extraterritorial jurisdiction over maritime vessels carrying narcotics on the high seas, outside United States territory. The high seas cases establish a bright-line rule as to when an international traveler may be prosecuted in the United States: "a sovereign may exercise jurisdiction over acts done outside its geographical jurisdiction which are intended to produce detrimental effects within it." *United States v. Arra,* 630 F.2d 836, 840 (1st Cir.1980). Accordingly, pursuant to this line of cases, the United States has successfully prosecuted defendants aboard vessels containing narcotics only when the evidence established that the defendants intended to bring the narcotics to the United States and distribute them there.

In *United States v. Hayes,* 653 F.2d 8 (1st Cir.1981), a United States vessel on the high seas was searched by the United States Coast Guard pursuant to a standard safety, documentation, and fishing inspection and was found to contain thirteen tons of marijuana. The *Hayes* court held that, "21 U.S.C. § 841(a)(1), which makes possession with intent to distribute a crime, does not apply to American vessels on the high seas unless the 'intent to distribute' is an intent to distribute *in the United States.*" *Hayes,* 653 F.2d at 15 (emphasis added). In so ruling, the *Hayes* Court cautioned against the United States overreaching its extraterritorial powers:

> [W]e should not, in the words of Learned Hand, "impute to Congress an intent to punish all whom its courts can catch, for conduct which has no conse-

quences within the United States." *United States v. Aluminum Co. of America*, 148 F.2d 416, 443 (2d Cir.1945) .... We hold ... that so long as it is clear that the intended distribution would occur within the territorial United States ... jurisdiction may be maintained, (under 841(a)(1)).... Where distribution is intended elsewhere, however, the provision does not apply. *United States v. Hayes*, 653 F.2d 8, at 15–16.

In sum, the First Circuit has developed an extraterritorial seizure case law known as the high seas doctrine, applying to situations where maritime vessels are searched in international water. The high seas precedents establish that defendants aboard vessels (American or otherwise) on the high seas cannot be prosecuted for possession with intent to distribute narcotics unless the "intent to distribute" is an intent to distribute in the United States.[3] Magistrate Alexander invoked this reasoning to support her conclusion that the United States could not prosecute Cafiero for possession with intent to distribute because he clearly lacked an intent to enter the United States, much less distribute cocaine in the United States. This is also the rationale upon which Cafiero presents his motion.

## C. Holding

■ In this era of globalization no doubt borders have become fluid and the designation of territorial and extraterritorial jurisdiction often times seems like an outdated false binary. Nonetheless, the laws of the United States cannot and do not automatically circumscribe the conduct of all crimes contemplated or committed around the globe. To hold otherwise overstates the United States' authority or intention to influence and control actions that are by most standards immoral—like the sale of cocaine—but are not intended to occur in or affect the United States. Perhaps for that reason the words of Learned Hand wisely suggesting to the United States judiciary and public not to "impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences within the United States," *United States v. Hayes*, 653 F.2d 8, 15 (1st Cir.1981)(citing *United States v. Aluminum Co. of America*, 148 F.2d 416 443 (2d Cir.1945)), ring true.

I find that the circumstances of Cafiero's case are more akin to those of the high seas defendants than the in-transit travelers who knew they would or might stop in the United States. Cafiero did not voluntarily board a flight that he knew or should have known was scheduled to stop in the United States. Therefore, Cafiero cannot honestly be lumped with those in-transit travelers who "choose to pass through this country, however briefly." *United States v. McKenzie*, 818 F.2d 115, 120 (1st Cir.1987). As the Federal Bureau of Investigation agent, Margaret Cronin testified, at Cafiero's first probable cause hearing, upon arrival (before searching him), the American authorities determined that they would not charge Cafiero with interference with a flight crew because, in

---

**3.** Though these cases discuss the validity of exerting extraterritorial jurisdiction over high seas vessels for violating the statute prohibiting possession with intent to distribute, this test also provides a just way to calculate jurisdictional validity as to those charged with simple possession as well. Since it is generally understood that no sovereign can prosecute foreign defendants outside its borders with simple possession of narcotics without some jurisdictional nexus, the issue is not dealt with in the high seas cases. Reading between the lines of the First Circuit's analysis of jurisdiction on the high seas, I conclude that the Court would not uphold jurisdiction over a foreign vessel carrying narcotics, found on the high seas absent any intention to enter or affect the United States.

part, "the incident occurred in international airspace and because the air carrier and its flight crew were not American." *United States v. Cafiero*, M.J. Alexander, Opinion and Order, June 24, 2002.

The following facts compel the conclusion that the United States lacks the necessary jurisdictional nexus to prosecute Cafiero for possession with intent to distribute or for simple possession: he was aboard an international flight; he is an Italian citizen; and he did not willingly or knowingly enter the United States. Cafiero's case clearly fails to meet the high seas or extraterritorial seizure test: "a sovereign may exercise jurisdiction over acts done outside its geographical jurisdiction which are intended to produce detrimental effects within it." *United States v. Arra*, 630 F.2d 836, 840 (1st Cir.1980). Put differently, as in this case, the United States may not exercise jurisdiction over acts which were not intended to produce any effects within its territories, and the mere physical presence of the defendant does not eviscerate this test when that presence is involuntary.

Without downplaying the importance of stopping the international drug trade, I find that Cafiero's case lies beyond what Congress had in mind in writing 21 U.S.C. § 844 or § 841(a)(1). Accordingly, the motion to dismiss Counts One and Two is GRANTED.

## V. Motion to Suppress

Since the motion to dismiss the indictment against Cafiero is granted, the disposition of the motion to suppress is rendered somewhat academic. Nevertheless, for the reasons stated below, Cafiero's motion to suppress the evidence seized from his person during the two warrantless searches conducted on June 5, 2002, and the derivative fruits, is also granted.

### A. Cafiero's Motion to Suppress

The government characterizes the warrantless search of Cafiero at the police barracks as an inventory search. Accordingly, the government bears the burden of proving that the warrantless search of his person fits within one of the few exceptions to the warrant requirement. *See United States v. Donnelly*, 885 F.Supp. 300, 304 (D.Mass.1995). Under these principles, Cafiero asserts that there are two prerequisites for a warrantless inventory search to meet constitutional muster. First, the individual whose person or possessions subject to be inventoried must be in the lawful custody of law enforcement authorities. *See, e.g., Whren v. United States*, 517 U.S. 806, 811, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Secondly, this search must comply with the standardized inventory policy.

Cafiero argues that the government cannot meet either prong of the test. As evidence that he was not in lawful custody at the time the police conducted the inventory search, Cafiero invokes the testimony (reproduced by M.J. Alexander in her Memorandum and Opinion of June 24, 2002) of FBI Agent Cronin:

> Notably, it appears that at the time that American Authorities took custody of the defendant a decision had been made that he *would not be charged* with federal statutes proscribing interference with a flight crew. According to Agent Cronin's testimony, the decision was made in part because the incident occurred in international airspace and because the air carrier and its flight crew were not American. Thus, there is not an insignificant question here as to what legal basis and authority were used to take custody of the defendant at that time—a question that remains unanswered at this juncture.

Memorandum and Order on Probable Cause and Detention, June 24, 2002, at 3–4 (emphasis in original).

Thus, Cafiero argues that he was not even arrested prior to the "inventory search" nor was he in lawful custody because as noted above, the authorities did not intend to arrest him for interference with a flight crew under the federal or state laws. In fact, Cafiero stresses that he was not arrested until after he was searched and the cocaine was found, as is evident from the booking sheet, which lists both interference with a flight crew and possession of cocaine as the grounds for his arrest.

■ "Evidence recovered after an arrest may not form the basis of probable cause for that arrest," *United States v. Bizier,* 111 F.3d 214, 217 (1st Cir.1997); thus, Cafiero charges that the cocaine seized from his person cannot retroactively justify the search that revealed it. He also proposes an inference that the government's decision to describe the search as an inventory search, rather than a search incident to arrest, further establishes that the government did not assume it had probable cause at the time of the search, and did not consider its conduct a search incident to arrest, at least not until he was searched and the cocaine was discovered.

Further, Cafiero claims that because the search that produced the cocaine violated the Fourth Amendment and was illegally seized, the second search of his person that occurred in the Marshal's lock-up was the direct fruit of that unlawful search and must likewise be suppressed.

*B. The Government's Opposition*

The government agrees with Cafiero on the law as to the two elements required to conduct a constitutional inventory search. Yet, the government stresses that to establish probable cause to arrest Cafiero, it must show only that "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." (Government's Memo. in Opp. p. 5, (citing *United States v. Cleveland,* 106 F.3d 1056, 1060 (1st Cir. 1997))).

Accordingly, the government contends that Cafiero was lawfully arrested at the time of the search, because the airplane landed in Boston, giving Massachusetts jurisdiction pursuant to M.G.L. ch. 90, § 40, the Massachusetts interference with a flight crew statute. Although Cafiero was never charged with violating the state law, the government notes that the State Police booking sheet lists M.G.L. ch. 90, § 40 as one of the offenses for which Cafiero was arrested, in addition to possession of cocaine. The government asserts that the state law authorizes the custodial detention and arrest of any person who interferes with or threatens to interfere with the operation of an aircraft.

The government points out also that Cafiero continued to be "unruly and combative" even when the airplane landed on Boston, Massachusetts soil, triggering the state interference law, and he violated the federal interference with a flight crew law, 49 U.S.C. § 46504, which provides United States authorities with jurisdiction if the aircraft is within the "special jurisdiction of the United States." Downplaying the fact that Cafiero has not been prosecuted for violating either the state or federal interference law, the government maintains that, "[p]robable cause need only exist as to any offense that *could* be charged under the circumstance." *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir. 1994) (emphasis added).

As to the search itself, the government claims that it went completely by the book and according to standard written proce-

dures. Further, the government offers an alternative characterization of its search of Cafiero as one incident to a lawful arrest (for interference with a flight crew). It maintains that the American authorities clearly had probable cause as to both state and federal crimes when Cafiero was taken to the police barracks, and thus the cocaine retrieved from his person is therefore admissible as property obtained during a routine inventory search or alternatively as contraband seized during a search incident to arrest.

### C. Analysis

■ As a preliminary matter, the limited facts of record do not support the government's alternative theory that Cafiero was searched incident to an arrest. As noted several times above, Agent Cronin testified that the American authorities did not intend to prosecute Cafiero for interference with a flight crew pursuant to either the Massachusetts law or that of the United States. Moreover, in her affidavit Agent Cronin states:

> While Cafiero was at State Police barracks, an inventory search was done by Trooper Tim Gillespie. Found in Cafiero's right front pocket was a package wrapped in black electrical tape.

(Def.'s Memo. in support of Mtn to Dism., Ex. C ¶ 9).

These facts, taken together with the fact that no booking sheet was filed until after the cocaine was discovered, lead to the conclusion that Cafiero was not under arrest—nor were law enforcement authorities contemplating his arrest—until after the cocaine was discovered. The Supreme Court has held that a warrantless search providing probable cause for an arrest cannot be justified as an incident of that arrest. *See e.g., Smith v. Ohio,* 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990). In *Smith v. Ohio* the Court explained why the circular logic does not stand up to the Fourth Amendment's requirement:

> the Ohio Supreme Court upheld the warrantless search of petitioner's bag under the exception for searches incident to arrest. The court stated that petitioner was not arrested until after the contraband was discovered in the search of the bag. It nonetheless held that the search was constitutional because its fruits justified the arrest that followed. That reasoning, however, "justify[ing] the arrest by the search and at the same time . . . the search by the arrest," just "will not do." As we have had occasion in the past to observe, "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification."

494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990) (*per curiam*) (citations omitted). Applying the facts of this case to the law of the United States, it is clear that the police did not conduct a search incident to arrest.

■ Moreover, the government has not met its burden of proof that the so-called inventory search met constitutional requirements. To measure the validity of an inventory search, first the court inquires whether the defendant was in lawful custody at the time of the search. Cafiero's extraterritorial "unruly" conduct does not constitute an offense over which Massachusetts or the United States had subject matter jurisdiction to prosecute him. In fact, Agent Cronin noted and testified to these jurisdictional defects at the probable cause hearing before Magistrate Alexander. The faulty jurisdictional nexus along with the apparent fact that there was no intent to charge Cafiero with violation of the interference laws, establishes that Cafiero was not in lawful custody at the time the inventory search occurred. Thus, this unlawful search and seizure of Cafiero con-

stituted a Fourth Amendment violation, and consequently, all items seized shall be suppressed as fruit of the poisonous tree.

### VI.

For the reasons stated above, the motion to dismiss and the motion to suppress the evidence is GRANTED. The complaint is dismissed.

It is so ordered.